GILBERT TEXAS CONSTRUCTION, L.P., Petitioner,

v.

UNDERWRITERS AT LLOYD'S LONDON, Respondent.

No. 08–0246.

Supreme Court of Texas.

Argued Oct. 6, 2009.

Decided Dec. 17, 2010.

---

120

Linda Jene Burgess, Craig T. Enoch, Winstead PC, Lee H. Shidlofsky, Douglas Paul Skelley, Visser Shidlofsky LLP, Austin, Andrew T. McKinney, McKinney & Cooper, L.L.P., Houston, for Petitioner.

Glenn Richard Legge, Alexander C. Papandreou, Karen Ann Conticello, Legge Farrow Kimmitt McGrath & Brown, LLP, Houston, for Respondent.

Claude Stuart III, Phelps Dunbar, Houston, for Amicus Curiae.

Patrick J. Wielinski, for Associated General Contractors of America, American Contractors Ins. Group, Ltd.

Micah Ethan Skidmore, for United Policyholders.

Timothy Poteet, for Texas Association of Defense Counsel.

Justice JOHNSON delivered the opinion of the Court.

We deny Gilbert Texas Construction's motion for rehearing. We withdraw our opinion of June 4, 2010 and substitute the following in its place.

During a Dallas Area Rapid Transit Authority (DART) construction project, unusually heavy rains resulted in water damage to a building adjacent to the construction site. The owner of the building sued DART and its contractors, alleging that construction activities caused the water damage. The building owner sued the general contractor in tort and for breach of contract. In the breach of contract claim, the building owner alleged that the general contractor assumed liability for the damage under its contract with DART. Except for the breach of contract claim, the trial court granted summary judgment for the general contractor on the basis of governmental immunity. The general contractor later settled the breach of contract claim and sought indemnity from its insurers. The excess insurer denied coverage.

We address two issues. The first is whether the contractual liability exclusion in a Commercial General Liability (CGL) policy excludes coverage for property damage when the only basis for liability is that the insured contractually agreed to be responsible for the damage, and if so, whether an exception to the exclusion operates to restore coverage. We hold that the exclusion applies, the exception does not, and there is no coverage. The second issue is whether Gilbert is entitled to recover its settlement payment under an estoppel theory. We hold it is not.

## I. BACKGROUND

### A. The Underlying Suit

In 1993, DART contracted with Gilbert Texas Construction, L.P., as general con-

tractor, to construct a light rail system. One part of the contract required Gilbert to protect the work site and surrounding property:

10. *Protection of Existing Site Conditions*

a. The Contractor shall preserve and protect all structures ... on or adjacent to the work site. . . .

b. The Contractor shall protect from damage all existing improvements and utilities (1) at or near the work site and (2) on adjacent property of a third party ... [and] repair any damage to those facilities, including those that are the property of a third party, resulting from failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work. If the Contractor fails or refuses to repair the damage promptly, [DART] may have the necessary work performed and charge the cost to the Contractor.

During construction, Dallas suffered an unusually heavy rain, and a building adjacent to the construction area was flooded. RT Realty (RTR), the building's owner,[1] sued DART, Gilbert, and other persons and entities involved in the construction. RTR alleged various theories of liability, including violations of the Texas Transpor-

tation Code and the Texas Water Code, nuisance, and trespass. RTR also claimed it was a third-party beneficiary of the contract between Gilbert and DART and that Gilbert was liable to RTR for breach of that contract.

DART provided insurance for the project through an Owner Controlled Insurance Program. Gilbert's primary coverage was by a CGL policy with Argonaut Insurance Company. Gilbert also had several layered excess coverage policies[2] through Underwriters at Lloyd's London[3] (Underwriters). Argonaut assumed Gilbert's defense and provided a list of approved defense counsel to Gilbert, who selected attorney James Grau to defend it. The original answer Grau filed for Gilbert contained a pleading asserting that Gilbert had sovereign immunity.[4]

Through its coverage counsel, Underwriters sent a series of reservation of rights letters to Gilbert. The letters generally (1) reviewed the claims made by RTR in each successive petition, (2) noted that under its policy, Underwriters did not have a duty to defend Gilbert and its obligation to indemnify Gilbert did not depend on allegations made in RTR's pleadings but would be determined by the judgment

---

1. Various interveners eventually joined the suit, including RTR's property insurers and persons who had offices in the flooded building.

2. Underwriters' policies generally followed form, meaning the policies tracked the essential terms of the primary policy. Underwriters' policies also had separate provisions and exclusions applicable to the excess policies. We will generally refer to Underwriters' policies collectively as "the policy" for ease of reference. Because our analysis focuses on provisions found in the primary policy, the policy language we reference, unless specifically noted otherwise, will be that of Argonaut's primary policy, which is incorporated by Underwriters' policy.

3. The policies were underwritten and risks participated in by various Members of the Lloyd's market and individual insurance companies. The underwriters and participating insurers will be referred to collectively as "Underwriters."

4. The State has sovereign immunity and subdivisions have what is called governmental immunity. The parties refer to DART's immunity and that of Gilbert, as DART's contractor, as sovereign immunity. However, we will use the term "governmental immunity" throughout this opinion as that is the proper terminology.

rendered and facts found in the suit, (3) stated that a coverage determination was not possible because no judgment had yet been entered and no fact finding accomplished, and (4) referenced various policy provisions that might preclude coverage for the damages being sought from Gilbert. In addition, the letters reserved Underwriters' rights to deny coverage under the policies and noted the potential conflict of interest between Gilbert and Underwriters because of Underwriters' position that damages claimed by RTR might not be covered. Underwriters' policy included a provision allowing Underwriters to associate with Gilbert in defense of claims.

Other defendants also responded to RTR's suit, in part, by claiming they had governmental immunity. The defendants moved for summary judgment on the basis of immunity. The trial court granted the motions for summary judgment except for RTR's claims against Gilbert for breach of contract.

A few weeks after the trial court granted partial summary judgment to Gilbert, Underwriters sent another reservation of rights letter. In that letter, Underwriters, for the first time, took the specific position that RTR's breach of contract claim was not covered because Underwriters' policy excluded coverage for contractual liability. Gilbert settled RTR's breach of contract claim for $6.175 million. Underwriters denied coverage.

## B. The Coverage Suit

Gilbert sued Underwriters for breach of contract and Insurance Code violations, also urging that Underwriters waived its right to deny coverage and was estopped to deny coverage. Both parties moved for summary judgment on all issues. The tri-al court granted Gilbert's motion as to coverage and granted Underwriters' motion as to Gilbert's statutory, waiver, and estoppel claims.

Underwriters and Gilbert both appealed. The court of appeals reversed and rendered judgment for Underwriters, holding that the breach of contract claim (1) fell within the policy's contractual liability exclusion and (2) was not excepted from the exclusion. 245 S.W.3d 29, 34–35 (Tex. App.-Dallas 2007, pet. granted). It additionally held that Underwriters had not waived its policy defenses and was not estopped from raising the defense of non-coverage because Underwriters had not assumed Gilbert's defense. *Id.* at 37.

In this Court, Gilbert asserts that (1) the contractual liability exclusion does not apply because Gilbert's liability arises from its own breach of contract and not from another's liability that Gilbert assumed; (2) even if the exclusion applies, an exception to the exclusion brings the breach of contract claim back into coverage because Gilbert would have been liable to RTR in the absence of its contract with DART; and (3) in the alternative, Underwriters asserted control over Gilbert's defense and prejudiced Gilbert, so under an estoppel theory Gilbert should be awarded damages for the amount it paid to settle RTR's lawsuit.

We agree with the court of appeals: the contractual exclusion applies to the breach of contract claim and the exception for liability the insured would have absent its contract is inapplicable. Further, we determine that Gilbert was not prejudiced by Underwriters' actions and Underwriters is not required to pay damages to Gilbert under an estoppel theory.[5]

---

5. Underwriters also asserted issues the court of appeals did not reach: (1) an exclusion in the excess policy bars coverage for breach of contract; (2) RTR's claim did not involve a covered occurrence resulting in liability for which Gilbert was obligated to pay damages;

## II. DISCUSSION

### A. Standard of Review

The parties do not dispute the applicable burdens of proof. Initially, the insured has the burden of establishing coverage under the terms of the policy. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex.2008). If the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion. *Id.* If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage. *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 193 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *see also Century Sur. Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 265 (5th Cir.2009).

When both sides move for summary judgment, as they did here, and the trial court grants one motion and denies the other, reviewing courts consider both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Embrey v. Royal Ins. Co. of Am.*, 22 S.W.3d 414, 415–16 (Tex.2000).

### B. Jurisdiction

As a preliminary matter, Underwriters argues that we lack jurisdiction. Gilbert contends, in part, that we have jurisdiction because the court of appeals' opinion conflicts with opinions of other courts of appeals on a question of law material to the decision of the case. *See* TEX. GOV'T CODE § 22.001(a)(2). We agree with Gilbert. The court of appeals' decision is contrary to a decision of the Four-

teenth Court of Appeals that held the contractual liability exclusion is limited to liability assumed for conduct of a third party, such as in an indemnity or hold-harmless agreement. *See Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 693 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). Here, the court of appeals held that the exclusion applies because Gilbert assumed liability in its contract with DART. 245 S.W.3d at 34. We have jurisdiction pursuant to section 22.001(a)(2) of the Government Code.

### C. Contractual Liability Exclusion

Coverage A of the policy, which is entitled "Bodily Injury and Property Damage Liability," provides that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.... The 'bodily injury' or 'property damage' must be caused by an occurrence." Exclusion 2(b) provides that the insurance does not apply to

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) Assumed in a contract or agreement that is an "insured contract;" or

(2) That the insured would have in the absence of the contract or agreement.

The policy's definitions section provides a definition of "insured contract." The term is defined as seven types of agreements, the last of which is an agreement to assume another's tort liability:

and (3) Gilbert lacked a reasonable basis for settling RTR's claim when there was no potential liability or basis for a judgment against Gilbert. In this Court, Underwriters argues

those issues warrant remand to the court of appeals in the event we reverse. Because we affirm the court of appeals' judgment, we do not reach the remand issues.

"Insured contract" means:

    a. A lease of premises;

    b. A sidetrack agreement;

    ...

    g. That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage." Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Underwriters does not argue that RTR's claim is not within the general terms of the policy; rather, it asserts that exclusion 2(b)—the contractual liability exclusion—precludes coverage because at the time Gilbert settled, the trial court had already granted summary judgment on all RTR's statutory and tort claims, and the only basis for liability remaining was for breach of contractual obligations Gilbert assumed in its contract with DART. Gilbert contends the contractual liability exclusion applies more narrowly. It contends the exclusion applies only in the limited situation in which the insured has assumed the liability *of another* such as in hold-harmless or indemnity agreements. Gilbert argues that to hold otherwise runs afoul of our decision in *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1 (Tex. 2007), in which we stated that a breach of contract claim can involve an occurrence and coverage does not turn on the label of the cause of action. Finally, Gilbert contends that, at the very least, the exclusion is ambiguous and must be interpreted in favor of coverage.

### 1. Preservation on Appeal

■ Underwriters argues at the outset that Gilbert waived its argument regarding the inapplicability of the exclusion because Gilbert did not timely assert and brief the issue in the court of appeals. *See* Tex. R.App. P. 53.2(f). As Underwriters observes, the court of appeals did not consider, in depth, the applicability of the exclusion because Gilbert did not dispute its applicability in its initial appeal. 245 S.W.3d at 34. Gilbert argues that it prevailed on the exclusion issue in the trial court and did not need to initially raise the issue in the court of appeals. We agree with Gilbert.

After the court of appeals reversed the trial court's judgment on this issue, Gilbert challenged the court of appeals' judgment both in a motion for rehearing in the court of appeals and in its petition for review. While ordinarily a party waives a complaint not raised in the court of appeals, a complaint arising from the court of appeals' judgment may be raised either in a motion for rehearing in that court or in a petition for review in this Court. *See* Tex. R.App. P. 53.2(f); *Bunton v. Bentley*, 153 S.W.3d 50, 53 (Tex.2004). Gilbert did not waive the issue.

### 2. Scope of the Exclusion

The policy at issue is a standard CGL policy developed by the Insurance Services Office, Inc. (ISO).[6] *See Lamar Homes*, 242 S.W.3d at 5; 2 Jeffrey W. Stempel, Stempel on Insurance Contracts § 14.01 (3d ed.2007). The meaning of the terms and exclusions within a standard policy should theoretically be the same in Texas as in other states. *See Lamar Homes*, 242 S.W.3d at 5. However, a lack of consensus on the meaning of terms in a CGL policy is

---

6. The ISO is an insurance industry organization which drafts standard forms used by insurers. *See Lamar Homes*, 242 S.W.3d at 5 n. 1.

not unusual. As noted above, Texas courts of appeals have reached different conclusions about the exclusion's effect, as have other state and federal courts.

■■■■ The principles courts use when interpreting an insurance policy are well established. Those principles include construing the policy according to general rules of contract construction to ascertain the parties' intent. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.,* 267 S.W.3d 20, 23 (Tex.2008); *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). First, we look at the language of the policy because we presume parties intend what the words of their contract say. *See Don's Bldg. Supply,* 267 S.W.3d at 23. We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 652 (Tex. 1999). The policy's terms are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense. *Don's Bldg. Supply,* 267 S.W.3d at 23; *see also Sec. Mut. Cas. Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex.1979). Courts strive to honor the parties' agreement and not remake their contract by reading additional provisions into it. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker,* 246 S.W.3d 603, 606 (Tex.2008). With these principles in mind, we turn to the language of the exclusion.

Considered as a whole, the contractual liability exclusion and its two exceptions provide that the policy does not apply to bodily injury or property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement, except for enumerated, specific types of contracts called "insured contracts" and except for instances in which the insured would have liability apart from the contract. In this case, Gilbert agreed under its contract with DART to "repair any damage to . . . facilities, including those that are the property of a third party, resulting from failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work." RTR originally sued on tort and statutory theories of liability, then added a breach of contract claim. But Gilbert prevailed on its summary-judgment motion, leaving only RTR's breach of contract claim. Thus, the only liability theory remaining at the time Gilbert settled arose from Gilbert's contract with DART and Gilbert does not claim there are facts that could result in its being liable under some theory besides breach of contract. Underwriters argues that the exclusion unambiguously applies to the breach of contract claim.

Gilbert, however, argues that the policy's plain language is not as plain as it might seem. Citing several authorities, Gilbert contends that in order to give meaning to the word "assumption" in the exclusion, the liability assumed must be that of another. *E.g., Am. Family Mut. Ins. Co. v. Am. Girl, Inc.,* 268 Wis.2d 16, 673 N.W.2d 65, 80–81 (2004) ("The term 'assumption' must be interpreted to add something to the phrase 'assumption of liability in a contract or agreement.' Reading the phrase to apply to all liabilities sounding in contract renders the term 'assumption' superfluous."). In other words, Gilbert would have us read the exclusion to say " 'property damage' for which the insured is obligated to pay damages by reason of the assumption of *another's* liability in a contract or agreement." Underwriters counters that we should not judicially rewrite the exclusion by inserting the word "another's" into it. We agree with Underwriters.

■■■ The exclusion bars coverage for liability of a third party that is assumed, such as that assumed by an indemnity agreement. But had it been intended to be so narrow as to apply *only* to an agreement in which the insured assumes liability of another party by an indemnity or hold-harmless agreement, it would have been simple to have said so. The parties' intent is governed by what they said in the insurance contract, not by what one side or the other alleges they intended to say but did not. *See Fortis Benefits v. Cantu*, 234 S.W.3d 642, 647, 649 (Tex.2007) (noting that contract rights arise from the parties' agreement and declining to "judicially re-write the parties' contract by engrafting extra-contractual standards"); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 753 (Tex.2006) ("[W]here the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction.").

The exclusion applies when the insured is obligated to pay damages "by reason of the assumption of liability in a contract or agreement." Those terms are not defined, so we give them their "generally accepted or commonly understood meaning." *Lamar Homes*, 242 S.W.3d at 8 (citing *W. Reserve Life Ins. Co. v. Meadows*, 152 Tex. 559, 261 S.W.2d 554, 557 (1953)). To "assume" means to "undertake." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 133 (2002). "Liability" is "[t]he quality or state of being legally obligated or accountable." BLACK'S LAW DICTIONARY 997 (9th ed.2009). Independent of its contractual obligations, Gilbert owed RTR the duty to comply with law and to conduct its operations with ordinary care so as not to damage RTR's property, and absent its immunity it could be liable for damages it caused by breaching its duty. In its contract with DART, however, Gilbert under-took a legal obligation to protect improvements and utilities on property adjacent to the construction site, and to repair or pay for damage to any such property "resulting from a failure to comply with the requirements of this contract *or* failure to exercise reasonable care in performing the work." (emphasis added). The latter obligation—to exercise reasonable care in performing its work—mirrors Gilbert's duty to RTR under general law principles. The obligation to repair or pay for damage to RTR's property "resulting from a failure to comply with the requirements of this contract" extends beyond Gilbert's obligations under general law and incorporates contractual standards to which Gilbert obligated itself. The trial court granted summary judgment on all RTR's theories of liability other than breach of contract, so Gilbert's only potential liability remaining in the lawsuit was liability in excess of what it had under general law principles. Thus, RTR's breach of contract claim was founded on an obligation or liability contractually assumed by Gilbert within the meaning of the policy exclusion.

Further, considering the exclusion and its exceptions as a whole reinforces our conclusion. *See MCI Telecomms.*, 995 S.W.2d at 652 ("When interpreting a contract, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless."); *Kelley–Coppedge, Inc.*, 980 S.W.2d at 464 (observing that we must "attempt to give effect to all contract provisions so that none will be rendered meaningless"). The first exception—the insured-contract exception—lists six specific types of contracts to which the exclusion does not apply. The seventh and final item in the list addresses assumption of another's tort liability: "That part of any other contract or agreement pertaining to your business under which you assume the

tort liability *of another* to pay damages because of 'bodily injury' or 'property damage' to a third person or organization. . . ." (emphasis added). The fact that the definition explicitly references assumption of the tort liability *of another* demonstrates that the parties are capable of using such narrow, specific language when that is their intent.

Gilbert argues that the exclusion should be read as applying to all situations in which the insured assumes another's liability while the insured-contract exception to the exclusion should be read as applying only to agreements in which the insured assumes another's tort liability. We agree that the insured-contract exception brings back into coverage contracts in which the insured assumes the tort liability of another—it says it does. But the exclusion does not say it is limited to the narrow set of contracts by which the insured assumes the liability of another person; the exclusion's language applies without qualification to liability assumed by contract except for two situations: (1) specified types of contracts referred to as "insured contracts," including indemnity agreements by which the insured assumes another's tort liability, and (2) situations in which the insured's liability for damages would exist absent the contract—in other words, situations in which the insured's liability for damages does not depend solely on obligations assumed in the contract.

Gilbert further argues that if the exclusion were meant to apply to a breach of contract claim like the one at issue in this case, it could easily have said just that. To illustrate its argument, Gilbert points to language in another section of the policy—"Coverage B. Personal and Advertising Injury Liability." As we understand it, Gilbert's argument is that Coverage B has an exclusion for both personal injury and advertising injury that is substantively

the same as Coverage A's contractual liability exclusion, except Coverage B's exclusion does not provide coverage for "insured contracts" as does the Coverage A exclusion:

> This insurance does not apply to:
>
> a. "Personal injury" or "advertising injury:"
>
> . . .
>
> (4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

Gilbert argues that if the foregoing exclusion applied to all contractual obligations, then a separate exclusion in Coverage B specific to advertising injury would be unnecessary. That particular exclusion provides as follows:

> b. "Advertising injury" arising out of:
>
> (1) Breach of contract, other than misappropriation of advertising ideas under an implied contract.

According to Gilbert, if Coverage B's contractual liability exclusion excluded all breach of contract claims, then the express breach of contract claim exclusion for advertising injury would be unnecessary. We are not persuaded. We do not hold that the exclusion in Coverage A precludes liability for all breach of contract claims. We hold that it means what it says: it excludes claims when the insured assumes liability for damages in a contract or agreement, except when the contract is an insured contract or when the insured would be liable absent the contract or agreement. The express breach of contract exclusion in Coverage B, on the other hand, excludes all claims "arising out of" a breach of contract—a potentially larger

category of claims than is excluded under the contractual liability exclusion.[7]

## 3. Holdings from Other Jurisdictions

Other jurisdictions have interpreted the exclusion differently than the way we do today. Gilbert points out that some jurisdictions, including the federal Fifth Circuit, have suggested, and held, that the exclusion applies to a limited category of cases in which the insured assumes the liability of another, such as in an indemnity or hold-harmless agreement.[8] Underwrit-

---

[7]. In its post-submission brief, Gilbert notes that some insurance policies include an express breach of contract exclusion in Coverage A of the policy. This, according to Gilbert, is further evidence that the contractual liability exclusion is not intended to exclude general breach of contract claims. We are not persuaded by the argument because the policy we are interpreting does not include such language in Coverage A, and each policy must be interpreted according to its own specific provisions and coverages.

[8]. See, e.g., *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 795 (8th Cir.2005) (suggesting exclusion applies only where insured assumes liability of a third party); *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 726 (5th Cir.2000) (the insured was not sued as the contractual indemnitor of a third party's conduct but rather for its own conduct, so the contractual liability exclusion was inapplicable); *Olympic, Inc. v. Providence Wash. Ins. Co.*, 648 P.2d 1008, 1011 (Alaska 1982) (" 'Liability assumed by the insured under any contract' refers to liability incurred when one promises to indemnify or hold harmless another, and does not refer to the liability that results from breach of contract."); *ACUITY v. Burd & Smith Constr., Inc.*, 721 N.W.2d 33, 40 (N.D.2006) (liability assumed by the insured in a CGL policy is "generally understood and interpreted by the courts to mean the liability *of another* which one 'assumes' in the sense that one agrees to indemnify or hold the other person harmless"); *Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co.*, 949 P.2d 337, 341 (Utah 1997) ("Courts have over and over again interpreted the phrase 'liability assumed by the insured under any contract' to apply only to indemnification and hold-harmless agreements, whereby the insured agrees to 'assume' the tort liability of another."); *Am. Family Mut. Ins. Co.*, 673 N.W.2d at 70 (Wis.2004) (contractually-assumed liability clause excludes coverage for liability "where the insured has contractually assumed the liability of another, as in an indemnification or hold-harmless

agreement"); 4 PHILLIP L. BRUNER & PATRICK J. O'CONNOR, BRUNER AND O'CONNOR ON CONSTRUCTION LAW § 11:109 (2010) (criticizing the court of appeals' judgment in this case and observing that the exclusion addresses "situations where the insured assumes the liability of another and, as a consequence, the insurer is placed in the position of extending coverage to a third party's liabilities for which the insurer performed no underwriting. In other words, the exclusion applies to the 'assumed' liability of another, not one's own liability due to a contractual undertaking."); C.T. Drechsler, Annotation, *Scope and Effect of Clause in Liability Policy Excluding from Coverage Liability Assumed by Insured Under Contract Not Defined In Policy, Such as One of Indemnity*, 63 A.L.R.2d 1122 (2009) ("[T]he contractual liability exclusion clause is not effective primarily in the two following situations: (1) where the insured is the one who is solely responsible for the injury, and (2) where the insured is the actively negligent wrongdoer."); 21 ERIC MILLS HOLMES, HOLMES' APPLEMAN ON INSURANCE § 132.3, 36–40 (2d ed.1996) (noting that the contractual liability exclusion clause refers to the assumption of another's liability as in an indemnity agreement); 2 ROWLAND H. LONG, THE LAW OF LIABILITY INSURANCE § 10.05[2], 10–61 (1st ed. 2006) ("Although it could be argued that one assumes liability (*i.e.*, a duty of performance, the breach of which will give rise to liability) whenever one enters into a binding contract, in the CGL policy and other liability policies an 'assumed' liability is generally understood and interpreted by the courts to mean the liability *of another* which one 'assumes' in the sense that one agrees to indemnify or hold the other person harmless therefor."); 1 BARRY R. OSTRAGER & THOMAS R. NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 7.05, 546 (14th ed. 2008) ("[C]ourts have consistently interpreted the phrase 'liability assumed by the insured under any contract' to apply only to indemnification and hold-harmless agreements, whereby the insured agrees to 'assume' the tort liability of another. This phrase does not refer to the insured's breach-

ers, on the other hand, cites cases interpreting the exclusion as we do—not limiting the exclusion's scope to only those situations in which the insured has assumed the liability of another.[9] While we believe our interpretation of the policy accords with longstanding principles of insurance contract interpretation, we consider it worthwhile to examine the rationale of courts reaching contrary conclusions.

Most courts that have held the exclusion to be limited in nature and to apply only when indemnity or hold-harmless agreements are involved have relied on a case from the Alaska Supreme Court, *Olympic, Inc. v. Providence Washington Insurance Co. of Alaska*, 648 P.2d 1008 (Alaska 1982), which interpreted an earlier version of the standard CGL form.[10] When *Olympic* was decided in 1982, the CGL policy contained an exclusion for contractual liability that was similar to the exclusion in the CGL policy before us, but which included an exception for "incidental contracts" rather than "insured contracts." *See id.*, at 1010;

21 Eric Mills Holmes, Holmes' Appleman on Insurance § 132.3[B][1] (2d ed.1996) (explaining the 1973 CGL contractual liability exclusion). The definition of "incidental contract" was narrower than the definition of "insured contract"; it did not include an explicit exception for certain indemnity or hold-harmless agreements as does the current CGL policy. *See* 21 Eric Mills Holmes, Holmes' Appleman on Insurance § 132.3[B][1]. Instead, coverage for specific indemnity or hold-harmless agreements was generally provided through a broad-form endorsement to the CGL policy. *See* 2 Rowland H. Long, The Law of Liability Insurance § 10.05[2] (2006).

In 1986, the ISO revised the CGL form to generally provide coverage for indemnity and hold-harmless agreements through the insured-contract exception within the general CGL policy, as opposed to through a broad-form endorsement. *See* 21 Eric Mills Holmes, Holmes' Appleman on Insurance § 132.3[B] (explaining that the purpose of the 1986 revision was to "combine

---

es of its own contracts."); 2 Jeffrey W. Stempel, Stempel on Insurance Contracts § 14.14 (3d ed. 2006 & Supp.2009) ("The CGL coverage for a policyholder's liability assumed by contract 'refers to liability incurred when one promises to indemnify or hold harmless another, and does not refer to liability that results from breach of contract.'") (quoting *Olympic*, 648 P.2d at 1011).

9.  *See, e.g., Nationwide Mut. Ins. Co. v. CPB Int'l Inc.*, No. 3:06–CV–0363, 2007 WL 4198173, at *8 (M.D.Pa. Nov.26, 2007) ("Exclusion (b) is simply further clarification in the policy that contract-based claims are not covered."); *CIM Ins. Corp. v. Midpac Auto Ctr., Inc.*, 108 F.Supp.2d 1092, 1099–1100 (D.Haw.2000) (clause in policy stating that policy does not apply to liability assumed under any contract or agreement means that any claim that is dependent on the existence of an underlying contract is not covered); *Monticello Ins. Co. v. Dismas Charities, Inc.*, No. 3:96CV–550–S, 1998 WL 1969611, at *2 (W.D.Ky. Apr.3, 1998) (exclusion for liability

assumed by the insured under any contract or agreement does not arise only when a party assumes the liability for another party; rather, the plain meaning of the policy excludes a breach of contract claim from coverage); *Silk v. Flat Top Constr., Inc.*, 192 W.Va. 522, 453 S.E.2d 356, 359 (1994) (exclusion removed coverage for breach of contract); *See also TGA Dev., Inc. v. N. Ins. Co. of N.Y.*, 62 F.3d 1089, 1091–92 (8th Cir.1995) (exclusion for which the insured has assumed liability in a contract or agreement plainly excluded coverage for contractual claims and not just hold-harmless or indemnity agreements); *but see Ferrell*, 393 F.3d at 795 (without overruling or mentioning *TGA Development*, holding that the contractual liability exclusion applies only to situations where the insured has contractually assumed a third party's liability, such as in an indemnification or hold-harmless agreement).

10.  Prior to 1986, the CGL policy was called the Comprehensive General Liability Insurance Policy.

the essence of the former 1973 [contractual liability exclusion] with the expanded liability coverage formerly provided under the broad-form endorsement"); *see Am. Family Mut. Ins. Co.*, 673 N.W.2d at 81.

With this history in mind, we examine *Olympic.* In that case, a lessee agreed to obtain insurance indemnifying its lessor, but obtained insurance indemnifying only itself in case of breach of the lease between the parties. *Olympic*, 648 P.2d at 1009–10. When a firefighter was killed in a fire on the leased premises, the firefighter's estate sued both lessee and lessor. *Id.* at 1010. The lessor's insurer settled with the firefighter's estate, then sued the lessee's liability insurer to recover part of the settlement. *Id.* The lessor's insurer claimed the lessee's insurer was liable because the lessee breached the lease agreement. *Id.* The lessor's insurer asserted that the lessee's insurer's incidental contract exception to the contractual liability exclusion for "any written ... lease of premises" implied that the policy insured against liability pursuant to any contract that was an incidental contract, i.e. the lease agreement. *Id.* The Alaska Supreme Court disagreed, holding that " '[l]iability assumed by the insured under any contract' refers to liability incurred when one promises to indemnify or hold harmless another, and does not refer to the liability that results from breach of contract." *Id.* at 1011. According to the court, because the exclusion was limited to indemnity and hold-harmless agreements and did not apply, the exception to the exclusion for leases could not bring the claim into coverage because the contract was not an indemnity or hold-harmless agreement. *Id.* Accordingly, the court held that the lessee's policy did not cover its failure to procure proper insurance coverage. *Id.* at 1013–14.

The *Olympic* court was interpreting the pre–1986 contractual liability exclusion, thus the court did not have a specific exception for indemnity or hold-harmless agreements before it as part of the contract. The court was not faced with a circular reading of the exclusion and insured-contract exception as we are in the instant dispute. However, the rationale behind the *Olympic* decision lends support to our interpretation of the exclusion. In reaching its holding, the *Olympic* court relied, at least in part, on its perception that breach of contract claims generally are not covered absent tort liability. The court noted in its opinion that the general terms of the policy applied only to liability imposed by law for torts, and not to damages for breach of contract. *Id.* at 1012. Thus, "[t]he contractual liability exclusion functions to relieve the insurer of responsibility for any 'extra' liability that the insured undertakes by contract beyond the liability imposed by law for negligence." *Id.* at 1011 n. 6. Moreover, the lessee in *Olympic* had a separate contractual liability policy listing specific contracts that were included in coverage, but the separate policy did not apply to the lease covenant because it did not list the covenant. A similar situation exists here: the policy did not have an endorsement adding Gilbert's contract with DART as an insured contract.

We disagree, by and large, with courts' and treatises' conclusions that the language of the contractual liability exclusion before us applies only to indemnity or hold-harmless agreements for the reasons mentioned above. Insurance policy interpretation principles emphasize a policy's plain language in determining its intended coverage. *See, e.g., Lamar Homes*, 242 S.W.3d at 14 (stating in regard to a CGL policy that coverage for a particular risk "depends, as it always has, on the policy's language, and thus is subject to change

when the terms of the policy change"); *Fortis Benefits,* 234 S.W.3d at 647 (noting that insurance contract rights arise from the insurance contract language); *Fiess,* 202 S.W.3d at 753 ("For more than a century this Court has held that in construing insurance policies 'where the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction.'") (quoting *E. Tex. Fire Ins. Co. v. Kempner,* 87 Tex. 229, 27 S.W. 122, 122 (1894)); *but see Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938–39 (Tex.1984) (holding that an aviation insurance policy's failure to include a causal connection requirement between the breach of the policy and the accident violated Texas public policy). We hold that the exclusion means what it says. It applies when the insured assumes liability for bodily injury or property damages by means of contract, unless an exception to the exclusion brings a claim back into coverage or unless the insured would have liability in the absence of the contract or agreement.

#### 4. *Lamar Homes*

Gilbert argues that to adopt Underwriters' interpretation of the exclusion "effectively eviscerates" our decision in *Lamar Homes.* In *Lamar Homes,* we said a breach of contract can constitute an occurrence that causes property damage, thus bringing some breach of contract claims within the general grant of coverage for purposes of determining a duty to defend. *Lamar Homes,* 242 S.W.3d at 13. We explained that "the label attached to the cause of action—whether it be tort, contract, or warranty—does not determine the duty to defend" and that "any preconceived notion that a CGL policy is only for tort liability must yield to the policy's actual language." *Id.* Gilbert contends that if

the exclusion in Underwriters' policy can operate to exclude general breach of contract claims, then our opinion in *Lamar Homes* would not have been necessary. Underwriters counters that our *Lamar Homes* decision did not interpret the exclusion but instead dealt with whether unintended construction defects could constitute an accident that would fall within the definition of an occurrence in the CGL policy's general grant of coverage.

██ We disagree that our interpretation of the exclusion in the policy runs afoul of our decision in *Lamar Homes.* The contractual liability exclusion was not at issue in *Lamar Homes.* There we considered whether property damage to a house that resulted from construction defects could nevertheless come within the general terms of liability coverage because the damage resulted from an occurrence as defined by the CGL policy. *See id.* at 10 ("The CGL's insuring agreement grants the insured broad coverage for property damage and bodily injury liability, which is then narrowed by exclusions that 'restrict and shape the coverage otherwise afforded.'") (quoting *Weedo v. Stone–EBrick, Inc.,* 81 N.J. 233, 405 A.2d 788, 790 (1979)). Whether a claim triggers an insurer's duty to defend and whether a claim eventually is covered or excluded for purposes of indemnity are different questions. *See D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.,* 300 S.W.3d 740, 743 (Tex.2009) (observing that "the duty to defend and the duty to indemnify 'are distinct and separate duties'") (quoting *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.,* 141 S.W.3d 198, 203 (Tex.2004)). In *Lamar Homes,* we did not address the duty to indemnify, but rather the separate duty to defend. An insurer's duty to defend is determined under the eight-corners doctrine, while the duty to indemnify is determined by the facts as they are established

in the underlying suit. *Id.* at 744 (quoting *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009)). Here, the facts demonstrate that Gilbert settled RTR's breach of contract claim after the trial court granted judgment in Gilbert's favor on all theories of liability besides the contractual one. And Gilbert does not contend the trial court erred in granting summary judgment on these other theories or that any liability it might have had to RTR arose from some source other than the breach of contract claim. Thus, RTR's only claim that remained pending against Gilbert fell within the policy's contractual exclusion for purposes of determining Underwriters' duty to indemnify.

### 5. Ambiguity

▮ Gilbert argues that even if we hold the exclusion applies to the facts of this case, the exclusion is ambiguous and we must interpret it in favor of coverage. According to Gilbert, the exclusion could apply to general breach of contract claims *or* it could only apply to contracts for indemnity, depending on one's interpretation. Underwriters counters that the exclusion is unambiguous.

▮ Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage. *Comsys*, 130 S.W.3d at 194; *Evergreen Nat'l Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 676 (Tex.App.-Austin 2003, no pet.). "Where an ambiguity involves an exclusionary provision of an insurance policy, we 'must adopt the construction ... urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex.1998) (quot-

ing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991)). But an ambiguity does not exist simply because the parties interpret a policy differently. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003). If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law. *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003); *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997).

We agree with Underwriters that the exclusion is not ambiguous. The exclusion is straightforward and not reasonably subject to two interpretations. It applies to liabilities the insured assumes by contract or agreement and not just to a particular subset of liabilities such as indemnity contracts. As discussed above, interpreting the exclusion as narrowly as Gilbert urges would yield a circular reading when the exclusion is considered in context with the insured-contract exception to the exclusion. In order to interpret the policy in a manner that harmonizes and gives effect to all provisions so that none are meaningless, Underwriters' interpretation is the only reasonable interpretation. *See MCI Telecomms. Corp.*, 995 S.W.2d at 652.

### D. Second Exception to the Exclusion

▮ Gilbert next argues that the second exception to the exclusion brings RTR's claim back into coverage. The second exception provides that the exclusion "does not apply to liability for damages ... [t]hat the insured would have in the absence of the contract or agreement." Gilbert urges that (1) in the absence of its contract with DART, Gilbert would have been liable to RTR in tort because without the contract Gilbert would not have enjoyed governmental immunity status; (2) to hold otherwise would defeat the purpose

of CGL coverage because there would not be coverage when there are multiple causes of action and the tort claim is dismissed for some reason; and (3) the exception must be construed broadly in favor of coverage. Underwriters counters that the duty to indemnify is based on the actual facts proven and adjudicated liability, and the only liability theory remaining when Gilbert settled with RTR was the breach of contract claim. We agree with Underwriters.

■ As the court of appeals observed, it is well settled that "a claim based on a contract that provides indemnification from liability does not accrue until the indemnitee's liability becomes fixed and certain." 245 S.W.3d at 35 (quoting *Ingersoll–Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 205 (Tex.1999)); *see Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 275 (Tex.App.-Houston [1st Dist.] 2001, no pet.) ("[T]he duty to indemnify arises from proven, adjudicated facts.").

While this case involves a policy exception, not an indemnity provision as in the cases referenced above, the contract language similarly guides our analysis. *See Ingersoll–Rand*, 997 S.W.2d at 207. As modified by the second exception, the exclusion precludes the insurer's liability for indemnity if the insured is obligated to pay only because of its contractually assumed liability. If the insured's liability is because of an otherwise covered basis in addition to its contractually-assumed liability, the second exception brings the claim back into coverage. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991) (recognizing that tort obligations are imposed by law independent of contractual obligations, but the acts of a party may simultaneously breach duties in tort and contract); *Cagle v. Commercial Standard Ins. Co.*, 427 S.W.2d 939, 943–44 (Tex.Civ. App.-Austin 1968, no writ) ("[W]here the

express contract actually adds nothing to the insured's liability, the contractual liability exclusion clause is not applicable, but where insured's liability would not exist except for the express contract, the contractual liability clause relieves the insurer of liability."). Therefore, to determine whether the exception applies, we must decide whether Gilbert proved it would have had liability for RTR's damages absent its contractual undertaking. *See Comsys*, 130 S.W.3d at 193.

Gilbert asserts that if no contract existed in the first place, it would not have had immunity and RTR's negligence claim against Gilbert would not have been subject to an immunity defense. Assuming, without deciding, that Gilbert is correct, the argument misses the mark. The determination of an indemnity obligation is based on the actual facts of the case as proven and the language of the indemnity agreement. Here, the existence of the contract between Gilbert and DART was merely an underlying fact that was to be considered in determining Underwriters' indemnity obligation. *See Ingersoll–Rand*, 997 S.W.2d at 208 (noting that an indemnification cause of action accrues when the indemnitee's liability becomes fixed and certain). Because RTR's tort claims were properly dismissed, the only viable claim underlying Gilbert's settlement was for breach of contract. Gilbert asserts no other basis for its settlement than the breach of contract claim; thus, Gilbert's settlement payment for which it seeks indemnity simply was not a liability for damages it had apart from its contract with DART, as it must have been in order for the second exception to apply.

Gilbert correctly argues that our decisions require us to interpret an exception to an exclusion broadly in favor of coverage. *See Evanston Ins. Co. v. ATOFINA Petrochems., Inc.*, 256 S.W.3d 660, 668

(Tex.2008). But that principle does not mean we should distort the exception in order to find coverage where none exists. Gilbert would have us disregard the actual facts underlying its settlement and hold that the exception applies even to potential liability that Gilbert *might* have had if it had not entered into a contract with DART. We decline to do so. Indemnity under a liability policy depends on the actual facts and adjudicated liability, not possible scenarios that did not occur.

Gilbert also argues that interpreting the exception to apply only to actual proven facts and adjudicated liability will bar coverage anytime a tort claim is dismissed during litigation and a contractual claim remains—for example, where a tort claim is dismissed based on a statute of limitations defense but a breach of contract claim remains. We understand Gilbert's concerns, but speculation about coverage of insurance policies based on surmised factual scenarios is a risky business because small alterations in the facts can warrant completely different conclusions as to coverage. It is proper that we await a fully developed, actual case to decide an issue not presented here. We note, however, as did the court of appeals, that it is common for insurance coverage determinations to depend on the final basis for the insured's liability. 245 S.W.3d at 35. For example, when a claim alleges that an insured caused damages by both negligent and intentional conduct, "a judgment based upon [negligent] conduct often triggers the duty to indemnify, while a judgment based on [intentional conduct] usually establishes the lack of a duty." *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex.1997).

Finally, contrary to Gilbert's assertions, to hold that the second exception does not apply here does not run afoul of our decision in *Lamar Homes,* in which we said that a cause of action's label does not determine whether an insurer has a duty to defend. *See Lamar Homes,* 242 S.W.3d at 13. The second exception contemplates a situation in which an insured's liability for damages results from matters that are within the policy's coverage in addition to or in lieu of the insured's contractually-assumed liability, but it does not prescribe whether the covered liability must be based in contract or tort. Moreover, *Lamar Homes* concerned a duty to defend rather than a duty to indemnify. *Id.* at 4–5. These are separate duties and are determined differently. *D.R. Horton–Tex., Ltd.,* 300 S.W.3d at 744 n. 2 ("In contrast [to the duty to defend], the duty to indemnify arises only once liability has been conclusively determined.") (quoting 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 200:3 (3d ed.2009)).

The exception for liability for damages Gilbert would have in the absence of the DART contract is inapplicable where, as here, the insured has governmental immunity and liability is based on its contract. If particular relationships of the parties, their contracts, and applicable legal principles create unusual circumstances, as they do here, it is incumbent on the parties to take those relationships, circumstances, and applicable legal principles into account when entering into contracts and insurance agreements. If we held as Gilbert proposes, we would be remaking the parties' insurance agreement. We decline to do so.[11]

---

11. Underwriters raises additional arguments which we need not address. First, Underwriters asserts that Gilbert was not cloaked with governmental immunity based on the DART contract per se, but based on Gilbert's status as a governmental contractor and its performance of specific governmental functions. *See* Tex. Transp. Code § 452.056(d) ("A private operator who contracts with an authority under this chapter is not a public

### E. Estoppel

Finally, Gilbert argues that if we determine no coverage exists under the policy, Gilbert is entitled to recover under an estoppel theory because Underwriters assumed control of Gilbert's defense and prejudiced Gilbert as a result. Underwriters responds that (1) Gilbert waived the issue because it did not raise it in the court of appeals, (2) Underwriters did not assume Gilbert's defense, and (3) Gilbert was not prejudiced by Underwriters' actions. We first address the procedural question.

In the court of appeals, Gilbert argued that coverage existed by virtue of waiver and estoppel. After the court of appeals released its decision, we overruled cases on which Gilbert relied and held that the doctrine of estoppel may not be used to create insurance coverage where none exists under the policy. *Ulico*, 262 S.W.3d at 780. Following our decision in *Ulico*, Gilbert reframed its argument to argue that it is entitled to damages by virtue of estoppel. Our rules provide that a case may be remanded for further proceedings in light of changes in the law. TEX.R.APP. P. 60.2(f). However, an analysis pursuant to our *Ulico* opinion is substantively the same as that undertaken by the court of appeals in addressing Gilbert's estoppel issue: a determination must be made as to whether Underwriters assumed control of Gilbert's defense and is estopped to refuse to pay damages Gilbert suffered because of Underwriters' actions. We see no need to remand the case to allow the court of appeals to consider an argument it has effectively already considered. In light of the unusual circumstances, we conclude that Gilbert is entitled to make its estoppel argument, so we will consider its merits. *See Westgate, Ltd. v. State*, 843 S.W.2d 448, 455 (Tex.1992).

In *Ulico*, we explained the estoppel doctrine as it relates to coverage when an insurer assumes an insured's defense:

> [I]f an insurer defends its insured when no coverage for the risk exists, the insurer's policy is not expanded to cover the risk simply because the insurer assumes control of the lawsuit defense. But, if the insurer's actions prejudice the insured, the lack of coverage does not preclude the insured from asserting an estoppel theory to recover for any damages it sustains because of the insurer's actions.

*Ulico*, 262 S.W.3d at 787.

Gilbert asserts that Underwriters directed Gilbert to seek summary judgment on RTR's tort claims based on governmental immunity, but did not inform Gilbert of Underwriters' position that the insurance policy did not cover breach of contract claims. Gilbert contends it was prejudiced because Underwriters' actions deprived it of the opportunity to make an informed decision about which risk to take:

entity for purposes of any law of this state except that an independent contractor of the authority that ... performs a function of the authority or an entity ... that is created to provide transportation services is liable for damages only to the extent that the authority or entity would be liable if the authority or entity were performing the function...."). Our holding precludes the need to determine whether Gilbert would have had immunity under the statute even in the absence of its particular contract, and we express no opinion on the question. Second, Underwriters argues that although its policy is a following-form policy generally, a separate exclusion in the excess policy bars coverage for "the failure of the Insured to complete a contract on time or to comply with any contractual obligations." Because we hold that the contractual liability exclusion in the underlying primary policy bars coverage for RTR's claim and exceptions to the exclusion do not bring the claim back into coverage, we do not reach the issue of the separate contractual exclusion in the excess policy.

(1) assert the immunity defense and risk Underwriters' denying coverage for the breach of contract claim, or (2) refuse to assert the immunity defense and risk Underwriters' denying coverage because Gilbert breached the cooperation clause.[12]

The court of appeals concluded that Underwriters did not assume control of Gilbert's defense. 245 S.W.3d at 37. We need not address whether Underwriters assumed control of the defense, however, because we conclude that even if Gilbert was deprived of the opportunity to make an informed decision as it claims, it was not prejudiced by the deprivation because in the final analysis, Gilbert did not have coverage for the contract claim regardless of whether it asserted the immunity defense as Underwriters directed it to do.

Gilbert primarily relies on our decision in *Employers Casualty Co. v. Tilley*, 496 S.W.2d 552 (Tex.1973), to support its claim of prejudice. *Tilley* involved a suit in which Employers sought a declaratory judgment that it did not have coverage for a personal injury suit in which Joe Tilley was a defendant. When Tilley reported that he had been sued, Employers and Tilley entered into a standard non-waiver agreement and Employers retained an attorney to defend him. *Id.* at 554. Employers questioned whether Tilley had timely reported the accident on which the suit was based, but it did not specifically advise Tilley that a conflict of interest existed because of the late notice issue. Nor did the defense attorney advise Tilley that the attorney had a conflict of interest in that he was simultaneously defending Tilley and gathering coverage information favorable to Employers. *Id.* Employers later denied coverage, in part, on the basis

of evidence developed by the defense attorney. *Id.* We held, largely on public policy grounds, that Tilley was prejudiced by Employers' actions and Employers was estopped to deny coverage. *Id.* at 561.

The facts of this case are not similar to those present in *Tilley*, and the prejudice Tilley suffered is different from the type of prejudice Gilbert claims. First, unlike the insurer in *Tilley*, Underwriters did not have a duty to defend Gilbert, nor did it retain Gilbert's defense attorney, Grau. There is no claim by Gilbert that Grau simultaneously defended Gilbert and represented Underwriters in regard to coverage, had a conflict of interest with Gilbert, developed and provided evidence to Underwriters that harmed Gilbert's coverage position without advising Gilbert, or in any other way breached his duty to Gilbert. To the contrary, Grau advised Gilbert to obtain coverage counsel and Gilbert knew Grau was not involved in coverage issues. Further, the suit with RTR was supervised by Gilbert's in-house claims manager who had over twenty-six years of experience in insurance claims and was monitored by in-house attorneys of Gilbert's parent corporation. Second, Underwriters consistently advised Gilbert during the pendency of RTR's case that coverage would be based on the actual facts underlying RTR's claims as they were determined to exist.

Gilbert does not explain how it was prejudiced by being unable to make an informed decision about whether to assert immunity when the ultimate risk to Gilbert under either choice—whether asserting immunity or refusing to assert immunity—was the same. While Gilbert claims that if it did not assert immunity Underwriters would have denied coverage for lack of

---

12. We assume the validity of Gilbert's argument. However, both Grau and Gilbert's claims manager testified that at a mediation before the hearing on Gilbert's summary judgment motion one of Underwriters' attorneys told Grau the breach of contract claim might not be covered if summary judgment were granted on the basis of immunity.

cooperation, there is no evidence that Gilbert would have had coverage for the claims even if it had refused to assert the immunity defense. Gilbert does not contest that the facts established in RTR's suit showed that all the contractors were immune. Further, there is no evidence that, regardless of whether Gilbert asserted immunity, Underwriters would have changed its position that coverage would be determined based on the facts of RTR's claim. Gilbert's lack of prejudice is reflected in a statement made by an attorney for its parent company. The attorney acknowledged that it likely would not have mattered whether Gilbert raised and pursued the issue of governmental immunity because the trial court ruled that governmental immunity extended to all the contractors. *See D.R. Horton–Tex., Ltd.*, 300 S.W.3d at 744 (noting that the duty to indemnify is determined by the facts as they are established in the underlying suit); *Pine Oak Builders, Inc.*, 279 S.W.3d at 656. Thus, Underwriters did not have coverage for RTR's claims regardless of whether Gilbert would have breached the policy's cooperation clause if it had refused to assert immunity, a question on which we express no opinion.

In sum, there is no evidence that if (1) Underwriters had advised Gilbert of Underwriters' belief that the breach of contract claim would not be covered if Gilbert succeeded in obtaining summary judgment on RTR's tort claims and (2) Gilbert had chosen not to pursue the summary judgment, then Underwriters would have settled the claim on behalf of Gilbert or been liable to indemnify Gilbert for the settlement. Thus, there is no evidence that Gilbert was prejudiced by not being able to make an informed decision as it claims.

### III. CONCLUSION

We agree with the court of appeals that the trial court (1) erred in granting Gil-

bert's motion for summary judgment on the issue of coverage and (2) correctly granted Underwriters' motion for summary judgment on the issue of estoppel. We affirm the court of appeals' judgment.

Justice LEHRMANN did not participate in the decision.