**Dissenting and Opinion Filed August 27, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00929-CV

**MATHESON TRI-GAS, INC., Appellant**

V.

**MAXIM INTEGRATED PRODUCTS, INC., Appellee**

### On Appeal from the 134th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-12-387

## DISSENTING OPINION
Before Justices Bridges, Francis, and Lang-Miers
Dissenting Opinion by Justice Bridges

Because I agree with appellant Matheson Tri-Gas, Inc. that the trial court's summary judgment in favor of appellee Maxim Integrated Products, Inc. contradicts this Court's previous ruling in *Matheson Tri-Gas, Inc. v. Atmel Corporation*, 347 S.W.3d 339 (Tex. App.—Dallas 2011, no pet.) ("*Atmel*"), I respectfully dissent on the issue related to the breach of contract claim.

While I agree with the majority's statement that we were not asked in *Atmel* to draw any conclusion about whether this Agreement (referred to as the MTG/Maxim Agreement in our *Atmel* opinion), as written, was enforceable against Maxim, I disagree with the majority that we did not draw such a conclusion. Rather, I believe language throughout *Atmel* reveals we did in fact determine a contract existed between Maxim and Matheson. As such, we are bound by that

determination as precedent and the majority may not dismiss our prior conclusion simply because we were not asked to interpret the specific contract provision before us now on appeal. BLACK'S LAW DICTIONARY 1195 (7th ed. 1999) (defining "precedent" as "[a] decided case that furnishes a basis for determining later cases involving similar facts and issues").

The question raised in *Atmel* was whether condition four of the termination agreement between Matheson, Atmel, and Maxim occurred, releasing Atmel from its previous obligation to pay under a supply agreement. 347 S.W.3d at 341. Condition four occurred when "Maxim beg[an] consuming product under the new MTG/Maxim Nitrogen Pipeline Supply Agreement." *Id*. To determine whether Maxim began "consuming product under" the MTG/Maxim Agreement, we analyzed the language of that "agreement." *Id*. at 343. The *Atmel* opinion then quoted as follows:

> This AGREEMENT, effective this 21st day of February, 2007, between MATHESON TRI-GAS, INC., . . . ("Seller") and Maxim Integrated Products, Inc. . . . ("Buyer").
>
> 1. SALE AND PURCHASE
>
> Seller agrees to sell and Buyer agrees to purchase all of Buyer's present and future requirements, during the term of the Agreement, of Nitrogen for Buyer's Site.

*Id*. We then referenced the MTG/Maxim Agreement throughout our analysis of interpreting whether condition four occurred under the termination agreement. In fact, in determining whether "consuming product under" meant consumption at production levels or a de minimis amount, our *Atmel* opinion concluded, "The MTG/Maxim Agreement is a take-or-pay agreement." *Id*. The opinion even quoted part of section 3(a), which is the subject of the present appeal:

> [The Agreement] is effective as of the date of the agreement . . . and its term commences *"on or about March 15, 2007 or as otherwise agreed upon by the parties in writing*."

–2–

*Id*. (emphasis added). Finally, in reaching the conclusion that condition four had been met, we specifically stated, "the MGT/Maxim Agreement requires that Maxim purchase all of its requirements of nitrogen at the Irving site from Matheson." *Id*. at 344.

Although we were not asked in *Atmel* to determine whether the Agreement was an enforceable contract, we analyzed *Atmel* under the premise that it was an enforceable contract. As cited above, we repeatedly referenced it as an "agreement." Moreover, in deciding whether Atmel produced summary judgment evidence establishing that Maxim consumed nitrogen under the Agreement, we relied on deposition testimony from Matheson's corporate representative, who testified that the Agreement was "effective and *enforceable* on May 1, 2007." (emphasis added)

While the majority distinguishes *Atmel* by contending we did not draw any conclusions about whether the MGT/Maxim Agreement was enforceable against Maxim, this Court relied on interpretation of that very contract to determine condition four applied, thereby releasing Atmel of its obligation under the separate termination contract. By now concluding the MGT/Maxim Agreement was not a binding contract because an essential term was missing, the majority has determined the very document that supported its decision in *Atmel* does not legally exist. I cannot agree with such a result.

With this in mind, I consider the appropriate summary judgment standard of review. A party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). To determine if the non-movant raises a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When, as here, both sides

–3–

move for summary judgment and the trial court grants one and denies the other, we consider the summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

Matheson attached the *Atmel* opinion as an exhibit to its motion for summary judgment on its breach of contract claim. In the factual background section of the motion it stated, "Even though Matheson believes that the Dallas Court of Appeals has already determined that the contract has commenced, Matheson will nevertheless, out of an abundance of caution, prove that the MGT/Maxim Agreement has commenced as a matter of law." Maxim asserted it was entitled to summary judgment on its contract claim as a matter of law because the parties never memorialized the commencement date of the contract in writing as required by paragraph 3(a).

Because I agree with Matheson, and the *Atmel* opinion attached to the motion for summary judgment provided the trial court with precedent from this Court as to the existence of the MGT/Maxim Agreement, I would conclude the trial court erred by granting summary judgment in favor of Maxim. Based on this conclusion, this Court should consider whether Maxim breached the MGT/Maxim Agreement and Matheson's third issue on appeal challenging the trial court's ruling on Maxim's affirmative defenses to Matheson's contract claim.

130929DF.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE