IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 7, 2009

Charles R. Fulbruge III
Clerk

No. 06-10930

CENTURY SURETY COMPANY,

Plaintiff-Appellee

v.

HARDSCAPE CONSTRUCTION SPECIALTIES INC.,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before KING, DENNIS, and ELROD, Circuit Judges.

JENNIFER W. ELROD, Circuit Judge:

In this Texas insurance coverage case, the scope of a commercial policy exclusion turns on the difference between tort and contract allegations in an underlying lawsuit. Because we conclude that the underlying suit alleges only breaches of contract, we hold in favor of the insurer.

I.

A.

Hillwood Residential Services, L.P. and Hardscape Construction Specialties, Inc. executed a contract wherein Hardscape agreed to construct a swimming pool facility for Hillwood at one of Hillwood's residential developments. The project included two pools, a bath house and pool equipment

building, sidewalks, fences, a playground, landscaping, and other improvements to Hillwood's property. The Hillwood-Hardscape contract contained the following indemnity provision:

> Contractor [Hardscape Construction, Inc.] shall indemnify and hold Hillwood Property Company, its employees, shareholders, agents, officers and directors harmless from and against any damage, liability or cause of action arising directly or indirectly out of or in connection with the performance of Contractor's services.

On the same day, Hardscape and Elite Concepts by Michale Nantz[1] executed a contract wherein Elite agreed to construct the swimming facility pools. The Hardscape-Elite contract contained the following provision:

> The Subcontractor [Elite Concepts] agrees to be bound to the Contractor [Hardscape Construction specialties, Inc.] under this Agreement according to the same terms and conditions as the Contractor is bound to the Owner under the Contract Documents which pertain or relate to the scope of work in this Subcontract as described in the Subcontract Work paragraph above.

Elite, in turn, hired Wang Engineering, Inc. to design the pools and Tornado Excavation, Inc. to construct piers and beams for one of the pools.

Elite held an insurance policy issued by Century Surety Company that covered certain "occurrences," which the policy defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy excluded "'bodily injury' or 'property damages' for which the insured is obligated to pay damages by reason of the assumption of liability

---

[1] We refer to Elite Group International, Inc., Elite Concepts by Michale Nantz, f/k/a Elite concepts, and Michael Nantz d/b/a Elite Concepts collectively as "Elite."

in a contract or agreement," but excepted from that exclusion certain contractual obligations to pay for another party's tort liability.

After the subcontractors completed the swimming facility, Hillwood sued Hardscape, Elite, Wang, and Tornado in a Texas state court, and alleged that faulty design and construction had caused physical and aesthetic damage to the pool and some of its surroundings. The petition asserts claims of negligence, gross negligence, breach of contract, breach of implied warranty, and breach of express warranty. In response, Hardscape demanded that Elite defend and indemnify Hardscape, citing the Hillwood-Hardscape and Hardscape-Elite contracts, and Elite forwarded the demand to Century. After Century failed to respond, Hardscape made the demand directly upon Century, who failed to respond.

## B.

Century then sued Hardscape, Hillwood, and Elite in the United States District Court for the Northern District of Texas. Century's complaint invoked the district court's diversity jurisdiction, *see* 28 U.S.C. § 1332, and sought a declaratory judgment relieving Century of any duty to defend Elite in the Hillwood lawsuit and of any duty to indemnify Elite or Hardscape, *see* 28 U.S.C. § 2201; Fed. R. Civ. P. 57. In cross-motions for summary judgment, Hardscape and Century sought judgment as a matter of law on issues of coverage and exclusion. The district court concluded that the Century policy's "occurrence" term did not cover the lawsuit-triggering construction errors, granted Century's motion, and denied Hardscape's. Hardscape now appeals from the final judgment. *See* 28 U.S.C. § 1291.

3

## II.

"We review a district court's grant of summary judgment *de novo*," and apply the same Rule 56 standard as the district court. *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008); *see also Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001) ("On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."). "We may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003).

Texas law governs this case, and places the burden of establishing coverage upon the insured, the burden of establishing an exclusion upon the insurer, and the burden of establishing an exception to an exclusion back upon the insured. *See, e.g.*, *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 527–28 (5th Cir. 2004) ("This Court reviews whether an insurer has a duty to defend its insured in an underlying suit as a de novo question of law."). In the motions for summary judgment and supporting briefs filed below, Century and Hardscape disputed both the scope of the policy's coverage and the scope of the exception to one of the policy's exclusions. The parties present the same arguments here, and we address each in turn.

### A.

First, the parties dispute whether Hardscape demonstrated that the Hillwood suit falls within the policy's definition of a covered "occurrence." Century argued below that the suit does not, because "occurrence" does not encompass damage to a contract's object; Hardscape argued that "occurrence"

4

need not be so limited, and that the term includes all negligent acts not expected by the insured.

Although Texas courts were divided on this question at the time of the district court's decision, *Lamar Homes, Inc. v. Mid-Continent Casualty Co.*, 242 S.W.3d 1 (Tex. 2007), has since resolved the split by holding that "allegations of unintended construction defects may constitute an 'accident' or 'occurrence'" under commercial general liability (CGL) policies. *Id.* at 4–16 ("[A] claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort) or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not."); *accord Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 652 (Tex. 2009). *Lamar Homes* addressed the terms of an industry-standard CGL policy, and thus it is no surprise that the relevant policy terms in *Lamar Homes* and this case are identical. *See Lamar Homes*, 242 S.W.3d at 5 & n.1. Both policies cover bodily injury or property damage that is "caused by an 'occurrence,'" and both policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See id.* at 6 & n.4. Furthermore, because the Hillwood suit allegations align with the *Lamar Homes* allegations, we are bound to hold that the Century policy's "occurrence" term covers the Hillwood suit. *See id.* at 9 ("Here, the complaint alleges an 'occurrence' because it asserts that [the underlying defendant's] defective construction was a product of its negligence. No one alleges that [the underlying defendant] intended or expected its work or its subcontractors' work to damage the [underlying plaintiff's] home.").

B.

Second, the parties dispute whether Hardscape met its burden of demonstrating that the Hillwood suit falls within the policy's "insured contract" exception to the "contractual liability" exclusion.[2] That exception provides, in part, that the contractual liability exclusion does not apply to damages assumed in "any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization," and defines "tort liability" as "a liability that would be imposed by law in the absence of any contract or agreement." Accordingly, the Hillwood petition triggers the exclusion's exemption only if it properly alleges a tort cause of action against Hardscape under the "eight corners"[3] rule applied by Texas courts.[4]

In its simplest form, the eight corners rule provides that "the petition's allegations and the policy's language determine the insurer's duty to defend," *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997);

---

[2] The parties agree that the Hillwood suit fell within the contractual-liability exclusion, which excluded any "'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

[3] The rule is also sometimes referred to as the "complaint allegations" rule. *E.g.*, *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999)

[4] *Lamar Homes*'s discussion of coverage under the "occurrence" term addressed no such tort/contract-based exclusion. *See Lamar Homes*, 242 S.W.3d at 7–16. There, the insurer attempted to employ a contract-tort distinction to advance its no-coverage argument, but only as an implied element of the definition of "occurrence." *See id.* at 8. *Lamar Homes* faced no exclusion similar to Century's. *See id.* at 13 ("Contrary to the carrier's contentions, the CGL policy makes no distinction between tort and contract damages. The insuring agreement does not mention torts, contracts, or economic losses; nor do these terms appear in the definitions of 'property damage' or 'occurrence.'"); *see also id.* at 15 ("The dissent's preoccupation with ownership is merely a stalking-horse for the carrier's contention that CGL policies are for tort claims only. The policy, however, does not include this limitation.").

*accord Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490–91 (Tex. 2008); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).[5] Texas courts also adhere to a specific pleading requirement: "A court must focus on the factual allegations rather than the legal theories asserted in reviewing the underlying petition." *Griffin*, 955 S.W.2d at 82; *accord Merchs. Fast Motor Lines*, 939 S.W.2d at 141–42 ("We will not read facts into the pleadings."); *see also Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965) ("While we have said above that the court is limited to a consideration of the allegations and the insurance policy in determining an insurer's duty to defend, we wish to point out that in considering such allegations a liberal interpretation of their meaning should be indulged."); *Zurich*, 268 S.W.3d at 491 ("We resolve all doubts regarding the duty to defend in favor of the duty and we construe the pleadings liberally." (citations omitted)). Thus, to fall within the exclusion's exception, the Hillwood petition must make specific factual contentions that, when construed liberally, could constitute "a liability that would be imposed by law in the absence of any contract or agreement." Our inquiry, therefore, focuses on the difference between common law tort and contract causes of action in Texas.

To determine the nature of a Texas lawsuit, "[w]e must look to the substance of the cause of action and not necessarily the manner in which it was pleaded." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617–18 (Tex. 1986). Texas courts characterize actions as tort or contract by focusing on the source of liability and the nature of the plaintiff's loss:

---

[5] This case does not require that we employ an exception to the eight corners rule, the existence of which is unsettled in Texas law, *see Northfield*, 363 F.3d at 529.

As one prominent authority has explained: "Tort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.

*Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 & n.2 (Tex. 1991) (citing W. Keeton et al., Prosser and Keeton on the Law of Torts § 92, at 655 (5th ed. 1984)); *see Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998); *Int'l Printing Pressmen & Assistants' Union of N. Am. v. Smith*, 198 S.W.2d 729, 735 (Tex. 1947); *see also Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999) ("Liability for personal injuries caused by a product's defective design can be imposed under several legal theories, among them negligence, breach of warranty, and strict products liability."); *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 283 (Tex. 1990) ("[W]hether a purchaser may sue for breach of warranty or strict liability for a defective product depends on whether the product merely did not perform as promised (contract) or whether it caused physical harm to person or property (tort)."). But of course, "[t]he difficulty in

determining whether the action is in tort or in contract is in the application of the rule," *Int'l Printing Pressmen*, 198 S.W.2d at 735, and thus the process of characterization resists rigid categories in favor of an analysis that accounts for all of a claim's particular contours.[6]

Century argues that an action seeking to recover damages to the subject matter of a contract constitutes a contract claim only, not a tort claim, and that the Hillwood petition is just such a suit. Hardscape does not dispute the dichotomy and argues only that the petition alleges damage to property beyond the Hillwood-Hardscape contract's subject matter.[7] In the Hillwood petition's "Factual Background," Hillwood alleges that Elite performed much of the work on the pools, and that the following damage arose as a result of construction and design defects:

---

[6] Take, for example, the following holdings from the Supreme Court of Texas. A claim for failure to perform a contract to publish a Yellow Pages advertisement that seeks damages in the form of lost profits is a contract action. *DeLanney*, 809 S.W.2d at 493–95; *see Formosa Plastics*, 960 S.W.2d at 45. So is a claim for wrongful expulsion from a Union that bases the right to membership on a contract. *Int'l Printing Pressmen*, 198 S.W.2d at 735–36. In contrast, a claim for failure to properly repair a water heater that seeks damages for the resulting house fire is a tort action, *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508 (Tex. 1947); *see DeLanney*, 809 S.W.2d at 494, and so is a claim for fraudulent inducement, *Formosa Plastics*, 960 S.W.2d at 45–47 ("[T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract."). *Cf. G., C. & S. F. R'y Co. v. I. T. Levy*, 59 Tex. 542 (1883) (a claim against a common telegram carrier for failure to deliver an important telegram is a tort claim).

[7] Because the policy speaks in terms of Elite assuming "the tort liability of another party," our inquiry focuses on characterizing the claims against Hardscape with reference to the Hillwood-Hardscape contract. We are not asked to characterize a claim against Elite, in which case we might refer to the Hardscape-Elite contract for the scope of our tort/contract distinctions.

Soon after the construction of the swimming facility, cracks first began to appear in the walls and floor of the competition pool. The cracks increased over time, both in width and length. The cracks caused aesthetic damage and permitted water to escape from the competition pool. The pools began showing signs of structural problems. The decking surrounding the pools, including the "cool deck" installed over the original decking, became uneven.

Hillwood then asserts a claim for "Negligence" in general terms: Hardscape and Elite owed Hillwood a duty to properly design and construct the pools, and each defendant acted negligently in the execution of the duties. With more detail, Hillwood alleges that it suffered the following damages:

As a direct and proximate result of the negligent acts and omissions as described above, Plaintiff [Hillwood] has suffered damages in the form of the costs of diagnosing and correcting defects. The structural maladies and poor workmanship discovered in the swimming facility were beyond repair, and required demolition and reconstruction of the swimming pools and decking. Further, structures at the swimming facility have shown signs of movement and instability, including the arbor cover over the tot pool. Plaintiff has incurred costs determining the quality of the soils in the area and assessing the structural integrity of the original pools. Plaintiff has incurred further costs in attempting to maintain the defectively designed and constructed pools and replacing the water lost through the cracks in the pools. Plaintiff has incurred costs in the demolition of the original pools and the design and construction of a properly designed and constructed swimming facility.

Most of these allegations are easily classified as giving rise to contract claims—namely, because the damages occurred only to the subject matter of the Hillwood-Hardscape contract, and because no liability would arise independently of the contract. Thus, Hillwood made contract claims when it alleged that Elite's failure to properly design and construct the pools caused cracks in the walls and

floor of the pool, aesthetic damage, pool structural damage, and the like. Similarly, the resulting need to identify, diagnose, and correct the design and construction defects gave rise only to contract claims. *See DeLanney*, 809 S.W.2d at 494–95 & n.2.

One of the petition's allegations deserves a closer analysis. Hardscape places much reliance upon the petition's allegation that "[t]he decking surrounding the pools, including the 'cool deck' installed over the original decking, became uneven," and argues that damage to the cool deck would constitute an excepted tort if someone other than Hardscape were responsible for the damaged decking. As the argument goes, because the petition does not make clear who constructed the referenced cool deck, we should resolve the ambiguity in favor of Hardscape and coverage. *See Merchs. Fast Motor Lines*, 939 S.W.2d at 141 ("[I]n case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor.").

Hardscape's argument fails because no such ambiguity exists—the Hillwood petition makes clear that Elite constructed all of the decking pursuant to the Hardscape-Elite contract. Century attached three contract documents to its petition which, in combination, make clear that Hardscape charged Elite with the construction of all pool decking. First, Century attached the Hillwood-Hardscape contract and the contract's Exhibit A, which sets out plans and specifications for the various parts of the pool complex project. As part of the "Pools/Deck" category, the contract makes an allotment for "DECKING; 9,100 SF," which the exhibit describes as "LUMP SUM BID FOR TYPE C/@;

11

2,3/LSD.01 BUFF COOL DECK FINISH." The provision includes a hand written reference to "rock salt." Second, Century attached two pages of a document entitled "BID INSTRUCTION/BID SHEET FOR POOLS," which set out bids for each part of the project in categories that corresponded to the Hillwood-Hardscape contract's Exhibit A.[8] The bid sheet addressed "Decking" bids for 9,100 square feet, and listed the "POOL SUB-TOTAL WITH ROCK SALT/COLOR FINISH" as $348,875. Finally, Century attached the Hardscape-Elite contract, which charged Elite with performing the work indicated in "Exhibit A of this contract" for $348,875. Although Century did not attach the Hardscape-Elite contract's exhibit, and although the bid sheet did not refer to Elite, the documents read in conjunction leave no doubt that Hardscape charged Elite alone with the decking portion of the contract. In this case, we have no ambiguity to construe in Hardscape's favor. The decking portion of the Hillwood petition's allegations sounds in contract because the damage occurred only to the subject matter of the Hillwood-Hardscape contract, and because any liability arising from damage to the decking exists only as a result of the contract. *See DeLanney*, 809 S.W.2d at 494–95 & n.2.[9] A different result might obtain if, for example, Hillwood had alleged that the faulty pool construction damaged its business interests or adjacent property, *cf. Scharrenbeck*, 204 S.W.2d 508, but that is not this case.

---

[8] The sheet includes a statement that "[t]he intent of bids is to include all aspect os that particular item or areas, i.e., all lump sun bids shall be 'turn-key'." The two pages of the bid sheet do not refer to Elite.

[9] For identical reasons, the petition's allegation that "structures at the swimming facility have shown signs of movement and instability, including the arbor over the tot pool" alleges only a breach of contract.

Thus, despite the fact that the Hillwood petition alleges a cause of action that falls within the Century policy's definition of "occurrence," the policy's "contractual liability" exclusion operates to exclude the claims arising from the Hillwood suit, and no tort claim triggers the exclusion's "insured contract" exception. Century thereby defeated both the duty to defend and indemnity claims. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83–84 (Tex. 1997) ("[T]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify."). We hold that the district court did not err when it granted Century's motion for summary judgment, and that it did not err when it denied Hardscape's motion for summary judgment.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.