# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 15, 2012

No. 11-40512

Lyle W. Cayce
Clerk

EWING CONSTRUCTION COMPANY, INCORPORATED,

Plaintiff - Appellant

v.

AMERISURE INSURANCE COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DAVIS, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal calls upon us to interpret, under Texas law, a Commercial General Liability (CGL) insurance policy. Although CGL policies are standard-form documents, their terms are not interpreted uniformly nationwide. In many jurisdictions, the term that is the subject of this appeal—the contractual liability exclusion—is given a highly-technical, less-than-obvious meaning. In Texas, the same term is given its plain meaning, and functions so as to exclude insurance coverage for liabilities that the insured assumes by contract.

The district court held that a CGL policy's contractual liability exclusion applied in this case, and that no exception restored coverage. The insured construction company faces liability, if at all, because it contracted to construct

No. 11-40512

usable tennis courts for a school district, and it has allegedly failed to perform. We hold that the district court correctly interpreted the contractual liability exclusion, and correctly applied that exclusion with respect to the insurer's duty to defend the construction company. We also hold, however, that the district court was premature in applying the exclusion to the insurer's duty to indemnify. We AFFIRM in part, VACATE in part, and REMAND.

I.

In June 2008, Ewing Construction Company, Inc. ("Ewing") entered a contract with Tuloso-Midway Independent School District ("the School District"), in which Ewing agreed to construct tennis courts at a school in Corpus Christi, Texas. Soon after Ewing completed the tennis courts, the School District complained that the courts were cracking and flaking, rendering them unfit for playing tennis. On February 25, 2010, the School District filed a petition ("the underlying lawsuit") in Texas state court, seeking damages for defective construction, and naming Ewing as a defendant. Ewing tendered defense of the underlying lawsuit to Amerisure Insurance Company ("Amerisure"), its insurer under a CGL policy. Amerisure denied coverage.

On July 29, 2010, Ewing filed the instant action against Amerisure in the District Court for the Southern District of Texas, contending that Amerisure was obligated to defend it in the underlying lawsuit. Ewing's complaint seeks declaratory relief, contract damages, relief under the Texas Prompt Payment of Claims Statute, and attorney's fees.

After Amerisure answered and counterclaimed, the parties filed cross-motions for summary judgment and a joint stipulation of facts to aid the court in its consideration of these motions.

On April 28, 2011, the district court denied Ewing's motion, granted Amerisure's motion, and entered a final judgment dismissing the case. The court held that Amerisure owed no duty to defend or indemnify Ewing in the

No. 11-40512

underlying lawsuit because the CGL policy's contractual liability exclusion excluded coverage, and no exception to that exclusion applied.   For the same reasons, the court held that Amerisure had not violated the Texas Prompt Payment of Claims Statute.   Ewing appeals.

## II.

We review the district court's grant of summary judgment de novo, applying the same standards as the district court.   *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 679 (5th Cir. 2011).   Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).

This case is a diversity action, so we apply the substantive law of Texas, as interpreted by Texas courts.   *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011).   We must predict how the Texas Supreme Court would resolve the controversy, using existing Texas Supreme Court precedent as guidance.   *Id.* at 593-94.

We note at the outset that an insurer in a CGL policy assumes two duties: (1) to defend the insured against covered lawsuits and (2) to indemnify the insured against all covered claims and judgments.   *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex. 2009).   These duties are distinct, and one may exist without the other.   *Id.*   We will consider them separately.

## A.

We first consider whether the Texas Supreme Court would, under the facts of this appeal, determine that Amerisure owes a duty to defend Ewing in the underlying lawsuit.   An insurer's duty to defend is determined by the eight-corners rule, that is, by looking to the plaintiff's pleading in the underlying lawsuit and then to the insurance policy.   *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).   If the plaintiff's pleading in the underlying lawsuit alleges

No. 11-40512

facts that might fall within the scope of the policy, then that pleading triggers the insurer's duty to defend. *Id.*

Our application of the eight-corners rule begins with the School District's petition[1] in the underlying lawsuit, which alleges the following:

> On March 20, 2008 Plaintiff entered into a contract with Ewing in the amount of $2,168,000 for construction of tennis courts for the Tuloso-Midway ISD High School and Middle School, the work to commence on March 30, 2008 and substantial completion of the entire work to be not later than November 24, 2008. In fact, the notice of substantial completion came on or about April 20, 2009 and change orders increased the overall contract amount significantly. . . .

The petition goes on to allege the following failures:

> Serious tennis court cracking and flaking problems began shortly after completion of the work and have continued since. Chunks of the court surfaces are coming loose. Flaking, crumbling, and cracking make the courts unusable for their intended purpose, competitive tennis events. . . .

It then alleges that Ewing breached its contract and performed negligently:

> Defendant Ewing Construction has breached its contractual commitments, proximately causing damages to Plaintiff. On information and belief, Plaintiff says that Defendant Ewing and/or its subcontractors breached its contract in the following respects:
> a) Failing to complete construction in accordance with the contract plans and specifications;
> b) Failing to exercise ordinary care in the preparation, management and execution of construction;
> c) Failing to perform in a good and workmanlike manner; and
> d) Failing to properly retain and supervise subcontractors.

---

[1] We draw from the "Plaintiff's Second Amended Original Petition for Damages," which the parties' joint stipulation of facts indicates is the live pleading in the underlying lawsuit.

No. 11-40512

Furthermore, Defendant Ewing Construction and/or its subcontractors was/were guilty of negligence proximately causing damage to Plaintiff in the following respects:
> a) Failing to properly prepare for and manage the construction;
> b) Failing to properly retain and oversee subcontractors;
> c) Failing to perform in a good and workmanlike manner; and
> d) Failing to properly carry out the construction so that it was in [sic] completed in accordance with the plans and specifications.

The petition also states that Ewing "breached [its] duty to Plaintiff to use ordinary care in the performance of [its] contract[], proximately causing damages to Plaintiff."

In addition to this language from the School District's pleading, we must consider the terms of the CGL policy between Ewing and Amerisure. The CGL policy states that Amerisure must defend Ewing against any suit seeking "damages because of 'bodily injury' or 'property damage'" if the "'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" The CGL policy then provides the following:

> **2. Exclusions**
> This insurance does not apply to:
>
>  . . .
> **b. Contractual Liability**
> 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> **(1)** That the insured would have in the absence of the contract or agreement . . . .

Here, the parties agree that the alleged physical defects in the tennis courts constitute property damage caused by an occurrence that took place in the coverage territory. The parties dispute whether coverage is excluded by the

No. 11-40512

contractual liability exclusion and whether the liability alleged in the underlying lawsuit is of the sort that Ewing would have in the absence of a contract.

1.

The district court, relying on the Texas Supreme Court's decision in *Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010), held that the CGL policy's contractual liability exclusion applied in this case.

In *Gilbert*, the Dallas Area Rapid Transit Authority (DART) contracted with a construction company (Gilbert) to construct a light rail system. *Id.* at 121-22. The contract required the company to protect the area surrounding its work site, and the company contractually agreed with DART to repair damages to the property of third parties caused by its construction. *Id.* at 122. During construction, heavy rains caused flooding in a building near the work site, and the third party building owner sued the construction company under several theories. *Id.* The construction company's primary insurer assumed its defense, but its excess coverage insurer maintained that it had no duty to defend the company and might ultimately have no duty to indemnify either. *Id.* at 122-23. Only one legal theory, breach of contract based on the building owner's third-party beneficiary status, survived summary judgment, and the construction company settled that claim. *Id.* at 123. The construction company then sought indemnity from its excess coverage insurer, and sued when the excess insurer denied coverage. *Id.* The Texas Supreme Court held that the excess insurer owed no duty to its insured construction company because the CGL policy's contractual liability exclusion applied. *Id.* The court reasoned that in its construction contract with DART, the construction company had undertaken legal accountability to the third-party building owner by contract, and therefore the contractual liability exclusion applied by its plain meaning. *Id.* at 126-27. The court expressly rejected a technical meaning given to the exclusion in other

6

jurisdictions—that "assumption of liability" means only the assumption of liability of another, as in a hold-harmless agreement—insisting that in Texas the exclusion "means what it says." *Id.* at 131-32.

Applying *Gilbert's* plain meaning approach, the district court here found that the School District's complaint in the underlying lawsuit alleges contractual liability, and thus triggers the contractual liability exclusion in the CGL policy between Ewing and Amerisure. Ewing, however, argues that the district court's reliance on *Gilbert* was misplaced because entering a construction contract is not the same as assuming liability for faulty workmanship performed under the contract. In Ewing's view, the construction company's promise to repair third party property in *Gilbert* was an assumption of liability, but the relevant promise here—an implied promise to the School Board to perform the contract with ordinary care—is not. *Id.* at 127. Ewing argues that the contractual liability exclusion of the CGL policy cannot possibly be triggered by implied promises, which are contained in every contract, because the *Gilbert* court stated in dicta that the contractual liability exclusion does not "preclude[] liability for all breach of contract claims."[2] *Id.* at 128. The defect in Ewing's argument is that it elevates ambiguous dicta from *Gilbert* while minimizing that opinion's clear holding.

*Gilbert*, principally, stands for the proposition that a CGL policy's contractual liability exclusion excludes coverage for property damage when "the insured assumes liability for . . . property damage by means of contract . . . ." *Id.* at 132. The School District's complaint in the underlying lawsuit reflects that

---

[2] Ewing reads a bit too much into the *Gilbert* court's dicta. Although the contractual liability exclusion does not operate to exclude coverage for *all* breach of contract claims, it operates to exclude many. *Compare Gilbert*, 327 S.W.3d at 128 ("We do not hold that the exclusion in Coverage A precludes liability for all breach of contract claims.") *with id.* at 131 (approving of the principle that "breach of contract claims generally are not covered absent tort liability.").

No. 11-40512

the insured, Ewing, assumed liability for defective construction by agreeing in a contract to complete a construction project, specifically to build tennis courts. Whether the breached promise was implied or express, the promise was of a contractual nature, all the same. We therefore hold that the CGL policy's contractual liability exclusion excludes coverage in the instant case.

We acknowledge that *Gilbert* contains some rather opaque language, and that its particular facts make for imperfect comparisons to the instant case. Nonetheless, *Gilbert* furnishes the Texas Supreme Court's approach to the contractual liability exclusion, and that approach is straightforward: Apply the plain language of the exclusion, rather than grafting additional language to it. *Id.* at 131-32. Ewing's position, that the phrase, "assumption of liability in a contract" means "assumption of a duty to repair third party property, but not assumption of implied contractual duties," is contrary to that approach.

Applying this plain meaning approach preserves the longstanding principle that a CGL policy is not protection for the insured's poor performance of a contract. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 10 (Tex. 2007). Although other jurisdictions adopt this principle by holding that poor contractual performance is not, under a CGL policy, an occurrence causing property damage, Texas chooses to arrive at this holding through its interpretation of coverage exclusions. *See id.* at 5 n.3, 10 ("More often, however, faulty workmanship will be excluded from coverage by specific exclusions because that is the CGL's structure."). Our holding today respects this choice.

2.

Having determined that the contractual liability exclusion applies, we now ask whether any exception to that exclusion restores coverage. The district court found inapplicable the exception that Ewing asserts, that is, the exception to the contractual liability exclusion that allows coverage for liability that "the insured would have in the absence of the contract or agreement." Ewing contends that

8

No. 11-40512

the district court erred because the petition in the underlying lawsuit uses the term "negligence," and liability for negligence is liability that exists irrespective of a contract.

The School District's use of the term "negligence," however, is not dispositive. *See Century Sur. Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 267-70 (5th Cir. 2009). We must assess the substance of the School District's petition and determine whether it alleges an action in contract, tort, or both. *Id.* at 267 (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617-18 (Tex.1986)). To do this, we look to the "source of liability and the nature of the plaintiff's loss . . . . When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Id.* (quoting *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-95 & n. 2 (Tex.1991)).

Ewing's contract with the School District is the source of its potential liability because Ewing's duty to construct usable tennis courts arose out of contractual undertakings. Further, the damage alleged in the School District's complaint is damage to the subject matter of the contract, the tennis courts, not to any other property. The school district's claim therefore sounds in contract, regardless of the other labels that may be attached to it.[3] *Id.* at 269-70. Because the liability Ewing faces is contractual, it is not liability that would arise in the absence of a contract. The exception, therefore, does not apply and coverage remains excluded. We hold that Amerisure owes no duty to defend Ewing in the underlying lawsuit.

3.

Before resolving the remaining issues on appeal, we pause to acknowledge a somewhat troubling concern. If the contractual liability exclusion means what

---

[3] Ewing argues that we may not make this assessment at this stage of litigation, when the question is the duty to defend rather than the duty to indemnify. We note that the stage of litigation was not a barrier in *Century*, a duty to defend case. *See* 578 F.3d at 265.

9

it says, then it will often exclude coverage under the same circumstances as another CGL exclusion: the "your work" exclusion. The "your work" exclusion excludes coverage for "property damage to [the insured's] work arising out of it or any part of it." Because an insured ordinarily undertakes work through a contract, the contractual liability exclusion will ordinarily accomplish the same purpose, that is, exclude coverage for property damage to the insured's work.

Troubled by this predicament, the dissent is persuaded by Ewing's position that "assumption of liability in a contract" encompasses promises to repair third party property, but not other contractual promises. In essence, the dissent narrows the influence of the contractual liability exclusion to preserve the influence of the "your work" exclusion. Although we also would prefer to avoid the confusion of overlapping exclusions, we cannot accept the dissent's solution.

The solution is premised on the least clear passage of *Gilbert*: a comparison of liability incurred under "general law principles" and liability incurred when promising to repair third party property. *See Gilbert*, 327 S.W.3d at 127. We view this passage as merely explaining why an obligation relating to third party property—which ordinarily would arise in tort—arose in contract under the unusual facts of the case. Whatever the passage means, it cannot call for a hyper-technical interpretation of the contractual liability exclusion, like the interpretation the dissent favors, without contradicting the rest of the *Gilbert* opinion. The opinion's bottom line is that "assumption of liability in a contract" means to have "undertake[n]" the "quality or state of being legally obligated or accountable" in a contract. *Id.* There is no question but that Ewing has assumed liability in that sense, and we will not contradict what is clear by seizing on what is not.[4] In fact, the dissent's interpretation—that only a promise

---

[4] The secondary sources referenced by the dissent do not influence our position. The dissent writes that no third party commentators "have interpreted [*Gilbert*] as the majority does." In fact, none of the sources referenced by the dissent interpret *Gilbert* at all; the

No. 11-40512

to repair the property of another is an assumption of liability—looks strikingly like the interpretation that *Gilbert* expressly rejected, i.e., that only an assumption of the liability of another is an assumption of liability. *Id.* at 126-27.

No matter how appropriate it may be to resolve cases like the instant case under the "your work" exclusion, that judgment is not ours to make. If, under Texas law, the contractual liability exclusion applies on the facts of this case, then we are bound to apply it, regardless of our misgivings. We think that it does.

## B.

Still, there is the question whether the Texas Supreme Court would determine that Amerisure owes a duty to indemnify Ewing in the underlying lawsuit. Unlike the duty to defend, which is determined by the eight corners rule, the duty to indemnify is determined by the facts actually established in the underlying lawsuit. *D.R. Horton*, 300 S.W.3d at 744. Accordingly, the duty to indemnify is ordinarily not justiciable until after the underlying lawsuit is resolved because coverage may turn on facts that are proven, even if those facts were not pled. *Id.* at 745.

The district court concluded that Amerisure owed no duty to indemnify Ewing. Although the court acknowledged that the underlying lawsuit was unresolved at the time, it concluded that "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).

This determination, we think, was premature. The Texas Supreme Court's holding in *Griffin*, on which the district court relied, is "fact-specific" and, importantly, "not based on a rationale that if a duty to defend does not arise

---

sources are case summaries that describe *Gilbert*. Descriptions of the case and the promise involved do not provide limitations on the case's importance or scope.

No. 11-40512

from the pleadings, no duty to indemnify could arise from proof of the allegations." *D.R. Horton*, 300 S.W.3d at 744, 745. If some fact outside of the pleadings may arise in the course of the underlying lawsuit that would trigger the duty to indemnify, then the duty to indemnify cannot be determined by the pleadings and insurance policy alone. *Id.* Other than quoting from *Griffin*, the district court did not specify why it considered the duty to indemnify justiciable at this point in the proceedings; and of course, the mere absence of the duty to defend, which has been described as the broader of the two duties, does not mean that there ultimately could be no duty to indemnify. *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253-54 (5th Cir. 2011).

Here, the School District might prove in the underlying lawsuit that Ewing's performance damaged property other than the tennis courts, thus triggering tort liability and the exception to the contractual liability exclusion. Coverage, to some extent at least, could be restored. Because we cannot rule out this possibility, we cannot say whether Amerisure will have to indemnify Ewing. *See id.* at 254-55. We therefore VACATE the district court's judgment with respect to the duty to indemnify and REMAND for consideration of whether the duty to indemnify is ripe for adjudication at this time, based on the current status of the underlying lawsuit.

## C.

Finally, the district court also held that because Amerisure owed no duty to defend or indemnify Ewing, it had not violated Texas's Prompt Payment of Claims Statute.[5] That conclusion flows from the sensible rule that there can be no liability for an insurer failing to pay a claim that is not covered by an

---

[5] The Texas Prompt Payment of Claims Statute provides for civil liability when insurers do not follow certain mandated procedures for investigating and paying insurance claims. Tex. Ins. Code § 542.060.

No. 11-40512

insurance policy. *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005).

With respect to the duty to defend, we find no error in the district court's holding. Amerisure may properly refuse to defend Ewing because it is under no legal obligation to do otherwise. With respect to the duty to indemnify, however, we must vacate in the light of our holding that the duty to indemnify was not justiciable at the time of the district court's judgment.

III.

We thus conclude: Based on the petition in the underlying lawsuit and the terms of the CGL policy, Amerisure owes no duty to defend its insured, Ewing. The School District alleges that Ewing breached its construction contract by building deficient tennis courts. Deficient performance that constitutes a mere breach of contract is not covered by the CGL policy because liability for deficient performance is contractual liability excluded under the contractual liability exclusion.

We cannot say whether Amerisure owes a duty to indemnify Ewing because facts that would trigger a duty to indemnify might still be proven in the underlying lawsuit, the status of which is uncertain on the record before us.

The district court's judgment is AFFIRMED in part, VACATED in part, and REMANDED with instructions to consider whether Amerisure's duty to indemnify Ewing and liability under the Prompt Payment of Claims Statute for refusing to indemnify Ewing are now ripe for adjudication.

No. 11-40512

W. EUGENE DAVIS, Circuit Judge, dissenting:

I respectfully disagree with my colleagues' interpretation of the Texas Supreme Court case of *Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010). They read that decision to say that a contract to construct tennis courts carrying with it implied contractual warranties amounts to an "assumption of liability" that is excluded under the contractual liability exclusion of the contractor's comprehensive general liability (CGL) policy. Because the entire weight of the majority's decision depends on this interpretation of *Gilbert*, that decision requires a closer look.

In *Gilbert*, a building located adjacent to the construction site where the Dallas Area Rapid Transit System (DART) was constructing a rail line was damaged by flooding during an unusually heavy rain. The third party owner of the building, RTR, sued Gilbert, DART's general contractor, in tort, and for breach of contract as a third party beneficiary to the contract between Gilbert and DART. The tort claim was dismissed on immunity grounds leaving only RTR's breach of contract claim pending against Gilbert. Gilbert settled with RTR and sought indemnity from its CGL carriers, one of which denied coverage.

In the instant case, the contractor, Ewing, undertook to build tennis courts for a school district, and this work allegedly had defects rendering them unfit for playing tennis.

There is a critical difference between the construction contract executed by Gilbert and the contract executed by Ewing – Gilbert's contract included the following language that is absent in Ewing's contract. Paragraph 10(b) of the DART/Gilbert contract provided:

14

No. 11-40512

b.    The Contractor shall protect from damage all existing improvements and utilities (1) at or near the work site and (2) on adjacent property of a third party . . . [and] repair any damage to those facilities, including those that are the property of a third party, resulting from failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work.    If the Contractor fails or refuses to repair the damage promptly, [DART] may have the necessary work performed and charge the cost to the Contractor.

*Gilbert*, 327 S.W.3d at 122.

The entire focus of the *Gilbert* court was on whether the obligation assumed by Gilbert in paragraph 10(b) of the DART/Gilbert contract quoted above was excluded under the contractual liability exclusion found at section 2(b) of the policy.    This provision excluded property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."    *Id*. at 124.    In other words, the sole question considered by the *Gilbert* court was whether the obligation undertaken by Gilbert in paragraph 10(b) of the contract fell within this exclusion, i.e., whether it was "an assumption of liability in a contract or agreement."    *Id*.

The insured argued that paragraph 10(b) did not fall within the exclusion for one reason:  the exclusion only applied in the "limited situation in which the insured has assumed the liability of another such as in a hold harmless or indemnity agreement."    *Id*. at 125 (emphasis in original).    This was a substantial argument based on authorities from Texas courts as well as courts from around the country.    However, the *Gilbert* court disagreed with this argument and accepted the underwriter's argument that if the policy was designed to only exclude assumption of liability of third persons, it should have said so.    The court therefore declined to read the exclusion as only excluding assumptions of liability "of another."    The court concluded that the obligation undertaken by Gilbert to protect from damage improvements on adjacent property, to repair

15

No. 11-40512

any such damage including that of a third party, and authorizing DART to have the necessary work performed and charge the cost to the contractor if it refused to repair the damage amounted to "an assumption of liability in a contract."

The court then explained that the obligation Gilbert undertook in paragraph 10(b) was independent of its general contractual obligation so as to qualify as an "assumption of liability":

> The obligation to repair or pay for damage to RTR's property "resulting from a failure to comply with the requirements of this contract" extends beyond Gilbert's obligations under general law and incorporates contractual standards to which Gilbert obligated itself. . . . Thus RTR's breach of contract claim was founded on an obligation or liability contractually assumed by Gilbert within the meaning of the policy exclusion.

*Gilbert.*, 327 S.W.3d at 127.[1]   In its explanation, the Texas Supreme Court plainly distinguished between two types of liability Gilbert could have under the construction contract – (i) the liability "it had under general law principles," and

---

[1]  The Texas Supreme Court's full explanation is as follows:

Independent of its contractual obligations, Gilbert owed RTR the duty to comply with law and to conduct its operations with ordinary care so as not to damage RTR's property, and absent its immunity it could be liable for damages it caused by breaching its duty.  In its contract with DART, however, Gilbert undertook a legal obligation to protect improvements and utilities on property adjacent to the construction site, and to repair or pay for damage to any such property "resulting from a failure to comply with the requirements of this contract *or* failure to exercise reasonable care in performing the work." (emphasis added). The latter obligation-to exercise reasonable care in performing its work-mirrors Gilbert's duty to RTR under general law principles.  The obligation to repair or pay for damage to RTR's property "resulting from a failure to comply with the requirements of this contract" extends beyond Gilbert's obligations under general law and incorporates contractual standards to which Gilbert obligated itself.  The trial court granted summary judgment on all RTR's theories of liability other than breach of contract, so Gilbert's only potential liability remaining in the lawsuit was liability in excess of what it had under general law principles.  Thus, RTR's breach of contract claim was founded on an obligation or liability contractually assumed by Gilbert within the meaning of the policy exclusion.

*Gilbert*, 327 S.W.3d at 127.

16

(ii) "liability in excess of what it had under general law principles." *Id.* According to the court, only the latter category – "liability in excess of what [a contractor] ha[s] under general law principles" – is contractually "assumed" within the meaning of the contractual liability exclusion. The court further explained that the ordinary contractual obligation "to exercise reasonable care in performing" work under a construction contract is equivalent to the contractor's duty "under general law principles." *Id.* Therefore, according to *Gilbert*, liability arising out of a violation of that duty, though sounding in contract, is not liability "assumed" by contract for purposes of the exclusion.

Thus, all *Gilbert* held was that when the insured affirmatively agreed in paragraph 10(b) to be liable for damages in excess of what it would have been liable for in tort or in contract "under general law" principles, then that liability was "assumed" and excluded. *Id.*; *see also Gilbert*, 327 S.W.3d at 134 ("'[W]here the express contract actually *adds nothing* to the insured's liability, the contractual liability exclusion clause is not applicable, but where [the] insured's liability *would not exist except for* the express contract, the contractual liability clause relieves the insurer of liability.'") (quoting *Cagle v. Commercial Standard Ins. Co.*, 427 S.W.2d 939, 943–44 (Tex.Civ.App.-Austin 1968, no writ)) (emphasis added). The majority's leap from this modest holding to say that any contractual undertaking to perform a construction contract represents an "assumption of liability" for all breaches of that contract cannot be squared with the court's careful language discussed above.

My conclusion is supported by the interpretation of the decision by third-party commentators. *Gilbert* was immediately recognized to be a significant decision, and after it was handed down a number of secondary sources – including reporters, treatises, and a law review – discussed its holding on the contractual liability issue. None have interpreted it as the majority does here, to hold that a contractor's agreement to perform a construction contract amounts

to an "assumption of liability" for its faulty performance of that contract. All read the case as I do: (1) to reject the insured's argument that the contractual liability exclusion was limited to the assumption of a third party's liability, and (2) to find that the liability in *Gilbert* was "assumed" under that exclusion because, in addition to agreeing to perform its work under the contract, the insured contractor also explicitly agreed to be responsible for the damage to neighboring properties.[2]

Some of these sources expressly reference the court's reasoning quoted above concerning "obligations under 'general law principles.'" They interpret it as I do, to explain that the liability in *Gilbert* was found to be "assumed" because Gilbert undertook an additional liability to pay for damages to a third party's structures resulting from its malperformance of the contract, in addition to the duties it already owed in contract and tort under "general law principles."[3]

---

[2] *E.g.*, C.T. Drechsler, *American Law Reports*, 63 A.L.R.2d 1122, §2[c] (updated weekly) ("Contractual liability exclusion [in *Gilbert*] . . . barred coverage when contractor assumed liability for damages in a contract, not just when contractor assumed the liability of a third party through a contract, and thus the exclusion applied to breach of contract claim brought by owner of damaged building adjacent to the construction site, which claim was based on provision of construction contract in which contractor agreed to protect from damage all improvements and utilities on adjacent property."); Scott C. Turner, Insurance Coverage of Construction Disputes § 10:8 (2011) ("Besides agreeing to perform the construction work, the insured agreed to repair any damage done to adjacent properties of third parties."); Hon. Craig Enoch, *Digest Texas Supreme Court Cases 2009-2010 Term*, 54 The Advoc. (Texas) 1, XVII.A.1. (2011) ("The primary issue in [*Gilbert*] was whether the contractual liability exclusion in a Commercial General Liability policy excludes coverage for property damage when the only basis for liability is that the insured contractually agreed to be responsible for the damage. . . . The Court refused to interpret the provision to apply only where the insured assumed another's liability in a contract, as argued by Gilbert."); Craig B. Glidden, *Business Litigation*, 4 West's Tex. Forms, Business Litigation Ch. 13 Introduction (2011) ("In [Gilbert], the Texas Supreme Court held that the contractual liability exclusion in a CGL policy excluded coverage for property damage when the only basis for liability was that the insured contractually agreed to be responsible for the damage.")

[3] *E.g.*, J. Price Collins, et al, *Insurance Law*, 64 SMU L. Rev. 341, 354-356 (2011) ("Discounting the proposition that 'assumption' referred only to the assumption of another's liability, the supreme court held that the exclusion applies in those situations in which the insured is obligated to pay damages by reason of the contractual assumption of liability beyond its obligations under general law. Because Gilbert already owed a duty to RTR under general

No. 11-40512

Again, no one interpreted this case as the majority does here, to hold that an "assumption of liability" is inherent in every agreement to perform a construction contract.

Finally, the majority's expansion of the contractual liability exclusion is apparently animated by the belief that unless coverage is excluded in this case as a contractually assumed liability, the CGL policy will act as a performance bond to cover all instances of the contractor's faulty workmanship. This concern that a CGL policy should not operate as a performance bond for the contractor has also been expressed by the Texas Supreme Court. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 10 (Tex. 2007) ("More often, however, faulty workmanship will be excluded from coverage by specific exclusions because that is the CGL's structure."). Although this concern does not justify the majority's unduly expansive reading of *Gilbert*, I understand and share their concern. However, this concern is adequately addressed by other policy provisions that make the majority's troublesome expansion of the contractual liability exclusion unnecessary.

As noted above, other "business risk exclusions" will usually exclude coverage in cases such as this one. This principle is illustrated by a recent decision of this court, another post-*Gilbert* faulty workmanship case from Texas. In *VRV Development L.P. v. Mid-Continent Casualty Co.*, 630 F.3d 451 (5th Cir. 2011), a contractor was sued by a property developer for its faulty workmanship. The contractor sought defense and indemnity coverage from its CGL insurer.

---

law principles to exercise reasonable care in performing its work, the supreme court concluded that the obligation to pay for damages 'resulting from a failure to comply with the requirements of this contract' represented an additional liability Gilbert assumed by contract."); Mark M. Schneier, 31 No. 9 Construction Litigation Reporter 9 (2010), and 32 No. 2 Construction Litigation Reporter 8 (2011) ("Independent of the prime contract, Gilbert owed RTR the duty to conduct its operations with ordinary care so as not to damage RTR's property and, absent immunity, Gilbert may have been liable to RTR for breaching its duty. In the prime contract, however, Gilbert undertook a legal obligation to protect properties adjacent to the work site, and to repair or pay for damage to any such property . . .").

No. 11-40512

The insurer denied coverage under the "your work"[4] and contractual liability exclusions,[5] and a suit followed. The district court upheld the denial on unrelated grounds.

On appeal, we found, consistent with *Lamar Homes*, 242 S.W.3d, at 4, that the faulty workmanship was an occurrence giving rise to coverage under the CGL policy. We found, however, that coverage was excluded under exclusion (l), the "your work" exclusion for "property damage to your work arising out of it." We also found that the subcontractor exception to that exclusion did not revive coverage, because the parties had included an endorsement in the policy removing the exception.

This ruling was consistent with the guidance of the Texas Supreme Court in two recent faulty workmanship cases, *Lamar Homes*, 242 S.W.3d at 12, and *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 653-55 (Tex. 2009). There, the Court found that coverage for a contractor's faulty workmanship under the CGL depends on (i) whether the underlying petition alleges faulty workmanship by the contractor or the subcontractor, and (ii) for work performed by the subcontractor, whether the parties included the endorsement eliminating the "subcontractor exception" to the "your work" exclusion in the policy. In *Lamar Homes* and *Pine Oak Builders* the parties had not included the endorsement, so coverage was excluded for the claims alleging faulty workmanship by the contractor, but not for the claims arising out of the subcontractor's work. In *VRV Development* the parties had included the

---

[4] A standard exclusion in CGL policies excludes coverage for "'[p]roperty damage' to 'your work' arising out of it or any part of it." "Your work" means, inter alia, "[w]ork or operations performed by you or on your behalf." *See VRV Development*, 630 F.3d, at 455.

[5] These were the bases for denying coverage for the claims that faulty workmanship resulted in damage to the subject of the contract, as is the issue here. The contractor also sought coverage for claims of damage to other property. This coverage was denied because the damage occurred outside the effective period of the policy, a denial which we upheld on appeal. *See VRV Development*, 630 F.3d at 458-59.

No. 11-40512

endorsement, so coverage was excluded even though the damage was allegedly caused by the subcontractor's work. In this case, the underlying petition alleges faulty workmanship by the subcontractors and the contractor, and the policy does not include the endorsement eliminating the subcontractor exception.

Thus, the well known endorsement discussed in the above cases was available in this case to exclude coverage for defects caused by the subcontractor's work had the parties bargained to include it in the policy. They did not do so. We should respect that bargain. More to the point, I read the Texas cases (as did our panel in *VRV Development*) as having chosen to rely on this "business risk" exclusion, in the form bargained for by the parties, to prevent the contractor's CGL policy from becoming a performance bond, without the majority's unnecessary and troublesome expansion of the contractual liability exclusion.[6]

### III

### Conclusion

For all of these reasons, I would reverse the district court's conclusion that the Ewing contract amounted to an assumption of liability that excluded Amerisure's coverage.

---

[6] The majority acknowledges this issue but endorses the contractual liability exclusion as merely another way to resolve these types of cases. This position would be acceptable if application of the contractual liability exclusion and the "your work" exclusion led to the same result. However, the "your work" exclusion contains the "subcontractor exception," for which the contractual liability exclusion contains no equivalent. The majority thus reads this exception out of existence. In my view, this renders a significant change in Texas insurance law, upsetting parties' settled expectations and dictating that these cases will henceforth be decided differently in federal court than they have been decided in Texas.

Like the majority, despite this result, I would still interpret the contractual liability exclusion to exclude coverage here if I thought that was the holding of *Gilbert*. I do not, for the reasons explained above. My observation that this interpretation yields a more coherent role for the contractual liability exclusion in the CGL policy merely reinforces this view. See *Gilbert*, 327 S.W.3d at 126 ("We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless.").

21

No. 11-40512

Alternatively, because this decision expands the holding in *Gilbert*, renders a major portion of the CGL superfluous, and is inconsistent with the way Texas courts have decided this type of case in the past, I would certify the question to the Texas Supreme Court.

Therefore, I respectfully dissent.