**AFFIRMED IN PART; REVERSED AND RENDERED IN PART; and Opinion Filed December 27, 2023**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-22-01366-CV**

**REMINGTON SHERMAN AUTOMOTIVE, LLC, Appellant**

**V.**

**FMG NORTH TEXAS, LLC, SUCCESSOR IN INTEREST OF FMO REAL ESTATE, LLC, Appellee**

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. CV-19-1015**

## MEMORANDUM OPINION

Before Justices Carlyle, Smith, and Kennedy
Opinion by Justice Carlyle

Remington Sherman Automotive, LLC appeals from a final judgment entered in favor of FMG North Texas, LLC. We affirm in part and reverse and render in part in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

This dispute arises out of an advertising billboard located on property adjacent to U.S. Highway 75 in Sherman. Dwight Ramey—proprietor of Ramey Chevrolet— leased the land on which the billboard is located to "The Lamar Companies" in 2010. "The Lamar Companies" is an assumed name used by various sub-entities of Lamar

Advertising Co., including Lamar Advantage Outdoor Company, LP (LAO), which held the rights to the lease.

The lease granted the Lamar Companies the right to place an "outdoor advertising structure" on the premises and provided that

> [a]ll structures, equipment and materials placed upon the premises by [The Lamar Companies] shall remain the property of [The Lamar Companies] and may be removed by [them] at any time prior to or within a reasonable time after expiration of the term hereof or any extension. At the termination of this lease, [The Lamar Companies] agree[] to restore the surface of the leased premises to its original condition.

A rider to the lease further provided that

> [a]ny provision to the contrary in this lease notwithstanding, [the parties] agree that [Ramey] may terminate this lease upon Sixty (60) days written notice and the return of any unearned rentals. [The Lamar Companies] will have Ninety (90) days from the receipt of such notice to remove their structure from the premises. Rent[] shall be due until the structure is removed and the [site] vacated by [The Lamar Companies].

The Lamar Companies installed the billboard on the premises, and the lease continued for approximately eight years without incident. During that time, LAO transferred its rights in the lease and billboard as part of a 2012 Asset Exchange Agreement between certain Lamar entities and certain "Fairway Outdoor Advertising" entities. FMG North Texas, LLC then acquired the rights in December 2018 as part of an Asset Contribution Agreement with other Fairway entities.

Remington purchased the Ramey Chevrolet dealership in 2018, along with the real property on which the billboard is located. On May 9, 2018, Remington notified

Fairway—which managed the billboard—that it was terminating the lease. The letter explained, however, that Remington was willing to discuss an arrangement whereby it would acquire ownership of the billboard structure and lease it back to Fairway.

The parties met two days later to discuss the possibility of a new lease, but each party insisted on owning the billboard structure going forward. Unable to reach an agreement, Fairway sent a crew to remove the billboard on August 9, 2018. After Fairway's crew arrived, Remington's attorney asked Fairway to leave the billboard intact so the parties could continue negotiating. Remington's counsel confirmed in a letter the following day that Remington agreed "for a period of not less than thirty days from the date of this letter your failure to remove or engage in efforts to remove the sign in response to the Notice provided on May 9, 2018, shall not constitute an abandonment of the sign or a waiver of your right to remove the sign pursuant to reasonably diligent efforts after the expiration of thirty days." The letter continued that the purpose of the agreement was "to facilitate continued negotiations . . . and to ensure that by failing to take steps now you are not deemed to have waived your right to the sign or have abandoned the sign."

The parties dispute the extent to which their negotiations continued in earnest after that point. Regardless, failing to reach an agreement, FMG's representatives went to Remington's dealership on May 14, 2019 and informed the manager there that FMG intended to remove the billboard structure. After confirming there was sufficient clearance to perform the removal, FMG notified Remington's counsel that

it intended to remove the billboard on May 24, 2019. When FMG's crew showed up on that date, Remington refused to allow access and surrounded the billboard with cars to prevent its removal. Remington later poured additional concrete around the billboard and began using it to advertise its own business.

After Remington refused to allow FMG access to the billboard, FMG filed this lawsuit seeking the billboard's return along with damages, alleging claims for conversion and breach of contract. The parties filed cross-motions for summary judgment as to liability on the conversion claim, and the trial court granted FMG's motion and denied Remington's. FMG then abandoned its breach-of-contract claim, and the trial court conducted a bench trial to determine FMG's conversion remedies. In its final judgment, the trial court ordered Remington to cooperate in allowing FMG to recover the billboard and awarded FMG $159,899.76 in loss-of-use damages. Remington appeals.

THE BILLBOARD IS A TRADE FIXTURE

Remington first argues the trial court erred by denying its motion for summary judgment on FMG's conversion claim because the billboard structure does not qualify as a "trade fixture" subject to such a claim. We review a trial court's order granting a motion for summary judgment de novo, generally taking as true all evidence favoring the nonmovant and indulging every reasonable inference in the nonmovant's favor. *Concho Res., Inc. v. Ellison*, 627 S.W.3d 226, 233 (Tex. 2021). "When, as here, the parties file cross-motions for summary judgment and the trial

–4–

court grants one and denies the other, we 'consider both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered.'" *Id.* (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010)).

To prove its claim for conversion, FMG had to establish: (1) it "owned, had legal possession of, or was entitled to possession of" the billboard structure; (2) Remington "unlawfully and without authorization, assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with" FMG's rights; (3) FMG "made a demand for the property"; and (4) Remington "refused to return the property." *Guillory v. Dietrich*, 598 S.W.3d 284, 292 (Tex. App.—Dallas 2020, pet. denied). Remington argues that the billboard does not qualify as a removable "trade fixture" to which FMG could claim ownership rights for purposes of the first element of its conversion claim. Instead, Remington contends, the billboard is a permanent fixture and thus an improvement to Remington's real property for which FMG has no property rights.

The term "trade fixture" refers to any article "annexed to the realty by [a] tenant to enable [the tenant] properly or efficiently to carry on the trade, profession, or enterprise contemplated by the tenancy contract or in which [the tenant] is engaged while occupying the premises, and which can be removed without material or permanent injury to the freehold." *Jim Walter Window Components v. Turnpike Distribution Ctr.*, 642 S.W.2d 3, 5 (Tex. App.—Dallas 1982, writ ref'd n.r.e.). Trade

fixtures are thus distinguishable from other fixtures and improvements made to real property in that trade fixtures are intended to be temporary and benefit the tenant's trade, while other improvements and fixtures are intended to be permanent and enhance the real property. *See id.* As between a landlord and a tenant, "in favor of trade and to encourage industry, the greatest latitude is allowed, so that all fixtures set up for better enjoyment of trade are retained by the tenant" as its removable personal property. *Id.*

Here, whether the billboard constitutes a removable trade fixture rather than a permanent improvement turns on the parties' intent, which we must discern from the lease. *See id.* ("The intent of the parties regarding the right to remove additions at the termination of a lease is to be determined from the provisions of the lease agreement."); *see also C.W. 100 Louis Henna, Ltd. v. El Chico Rests. of Tex. L.P.*, 295 S.W.3d 748, 754–55 (Tex. App.—Austin 2009, no pet.) ("Our resolution of these issues turns on construction of the ground lease."); *Tempo Tamers, Inc. v. Crow-Houston Four, Ltd.*, 715 S.W.2d 658, 664 (Tex. App.—Dallas 1986 writ ref'd n.r.e.) ("[W]hen a party improves another's property pursuant to a contractual agreement, the party's intent is determined from the contract's provisions concerning the additions or improvements."). We reject Remington's argument, based on the supreme court's opinion in *State v. Clear Channel Outdoor, Inc.*, 463 S.W.3d 488 (Tex. 2015), that such lease terms are irrelevant when determining whether property constitutes a trade fixture.

The issue in *Clear Channel* was whether the billboards there qualified as fixtures for purposes of condemnation compensation. The court noted that a "tenant's right to remove improvements when the lease ends cannot be invoked by the condemnor to limit compensation for a taking." *See id.* (citing *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 477 n.5 (1973)). The court also concluded that whether certain property constitutes a fixture is based on the parties' objective manifestations of intent, not their subjective assertions of intent. *Id.* at 494. Accordingly, lease terms allowing a tenant to remove the property are not relevant to determining whether the property qualifies as a fixture subject to condemnation compensation. *Id.*

In saying that, however, the court did not conclude that lease terms are irrelevant to determining whether, as between a landlord and tenant, an addition qualifies as a trade fixture to which the tenant would maintain ownership rights. Indeed, the court specifically noted that property can be both a fixture for purposes of determining condemnation compensation and a trade fixture for purposes of a tenant's removal rights. *See id.* at 494 (In *Brazos River Conservation & Reclamation District v. Adkisson*, "we held that an oil and gas lessee's well casing and other well-site equipment in an area condemned for a water reservoir were fixtures for which compensation was due, even though the lessee had the right to remove these trade fixtures and could have done so before inundation."); *see also id.* at 493–94 ("When an improvement to land, whether a building or a sign, cannot be removed except in

–7–

useless pieces, it is almost certainly a fixture under [the first factor articulated in *Logan v. Mullis*, 686 S.W.2d 605, 607–08 (Tex. 1985)], even if the tenant has a legal right to the pieces."). We do not read *Clear Channel* to suggest that lease terms are irrelevant to making trade-fixture determinations.

Here, the lease leaves no doubt that both the lessor and the lessee objectively intended that the billboard structure would remain the lessee's personal property and that the lessee could remove it when the lease ended:

> All structures, equipment and materials placed upon the premises by the **LESSEE** shall remain the property of **LESSEE** and may be removed by it at any time prior to or within a reasonable time after expiration of the term hereof or any extension. At the termination of this lease, **LESSEE** agrees to restore the surface of the leased premises to its original condition.

We also reject Remington's assertion that, regardless of what the parties agreed or intended, the billboard structure cannot qualify as a trade fixture because FMG intends to only partially remove it. To the extent Remington complains that FMG intends to cut the billboard structure at its base below the surface, leaving its concrete footing underground while restoring the surface to its original condition, we note that the lease specifically requires only that the surface be restored upon removal: "At the termination of this lease, **LESSEE** agrees to restore the surface of the leased premises to its original condition." The lease does not require the lessee to restore the subsurface to its original condition, and Remington points to no

summary judgment evidence suggesting that the concrete footing below the surface will materially hinder its use or enjoyment of the premises.

A landlord cannot induce a tenant to lease its property by promising that the tenant may erect a specific type of fixture on the property for use in its trade, promising that the fixture will remain the tenant's personal property, and promising that the tenant may remove the fixture at the end of the lease so long as the tenant agrees to restore the property's surface to its original condition, and then terminate the lease and claim ownership over the fixture by virtue of the fact that removing it as agreed will cause damage to the property.[1] On this record, and under these lease terms, we conclude the billboard structure's removal would not materially damage Remington's property and that it is a removable trade fixture subject to FMG's conversion claim.

THE NINETY-DAY REMOVAL PROVISION DOES NOT PRECLUDE FMG'S CLAIM

Remington next argues the trial court erred by denying its motion for summary judgment because FMG forfeited any ownership interest it may have had by failing to remove the billboard structure within ninety days of Remington's termination

---

[1] These facts distinguish this case from *Connelly v. Art & Gary, Inc.*, 630 S.W.2d 514, 516 (Tex. Civ. App.—Corpus Christi 1982, writ ref'd n.r.e.), in which our sister court determined that a tenant's intent to only partially remove a sign demonstrated it was not a removable trade fixture under the parties' lease. Unlike the lease here, the lease in *Connelly* was not entered into for the specific purpose of allowing the tenant to "construct[], repair and relocat[e] . . ." an advertising billboard structure, nor did it specifically provide that such a structure would remain the tenant's property, that the tenant had the right to remove it at the end of the lease, or that the tenant agreed to restore the surface of the property upon the structure's removal. *See id.* at 515. In fact, the lease in *Connelly* specifically prohibited the lessee from "plac[ing] any signs at, on, or about the premises except as and where first approved by the Lessor"—a provision the trial court found the tenant violated. *Id.* at 515.

–9–

notice, as required by the lease's termination rider. But again, the lease specifically states that "[a]ll structures, equipment and materials placed upon the premises by **LESSEE** shall remain the property of **LESSEE**." Nothing in the lease or rider states that the lessee would forfeit ownership of the billboard structure by failing to remove it within ninety days of the lease's termination. "Courts will not declare a forfeiture unless they are compelled to do so by language which can be construed in no other way." *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).

Here, the termination rider states: "Lessee will have Ninety (90) days from the receipt of [a termination notice] to remove their structure from the premises. Rent[] shall be due until the structure is removed and the [site] vacated by Lessee." This language does not require a forfeiture of the lessee's ownership interest; it merely establishes the lessee's obligation to remove the billboard within ninety days—the breach of which might subject the lessee to additional rent and any other damages flowing from the delay. *See Smith v. Nat'l Advertising Co.*, No. 14-00-00474-CV, 2002 WL 370200, at *2 & n.10 (Tex. App.—Houston [14th Dist.] March 7, 2002, pet. denied) (mem. op.) (not designated for publication) (rejecting argument that lessee forfeited ownership of a billboard by failing to timely remove it, noting there was no lease provision specifying that lessee's failure to timely remove the billboard would result in a forfeiture); *see also Reader v. Christian*, 234 S.W. 155, 157–58 (Tex. Civ. App.—Beaumont 1921) ("Where the title [to a fixture] is reserved expressly in lessee, and time for its removal stipulated, the failure to remove within

the time stipulated, in the absence of any provisions for forfeiture, does not forfeit the property or divest the title out of lessee, but subjects him to pay whatever damages may be suffered by the lessor by reason of delay in removal.").

Furthermore, Remington waived its right to enforce the ninety-day removal provision. "Waiver is the 'intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *LaLonde v. Gosnell*, 593 S.W.3d 212, 218–19 (Tex. 2019) (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 393 (Tex. 2014)). It "'results as a legal consequence from some act or conduct of the party against whom it operates' and is 'essentially unilateral in character,' meaning 'no act of the party in whose favor it is made is necessary to complete it.'" *Id.* (quoting *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 485 (Tex. 2017)).

The summary judgment record establishes that, despite being aware of the termination rider's provisions, Remington's counsel sent FMG's representatives a letter on August 10, 2018, soon after the ninety-day removal period expired, confirming that Remington agreed "for a period of not less than thirty days from the date of this letter your failure to remove or engage in efforts to remove the sign in response to the Notice provided on May 9, 2018, shall not constitute an abandonment of the sign or a waiver of your right to remove the sign pursuant to reasonably diligent efforts after the expiration of thirty days." The letter continued by stating Remington's intention was to facilitate further negotiations in hopes of reaching a

new lease agreement. This letter establishes as a matter of law that Remington both intentionally relinquished and acted in a manner inconsistent with any right to strictly enforce the termination rider's ninety-day removal provision. The trial court did not err by rejecting Remington's argument that FMG forfeited its ownership interest in the billboard by failing to remove it within ninety days of termination.

FMG SUFFICIENTLY PROVED ITS OWNERSHIP INTEREST

Remington next contends the trial court erred by granting FMG's motion for summary judgment because FMG did not sufficiently prove it acquired any ownership rights to the lease or billboard structure from "The Lamar Companies." We disagree. FMG provided an affidavit from Connor Eglin, Lamar Advertising Co.'s Associate General Counsel, explaining that "The Lamar Companies" is an assumed name used by various Lamar Advertising Co. sub-entities, including LAO—which held the rights to the billboard and lease at issue and transferred them as part of a 2012 Asset Exchange Agreement between various Lamar and Fairway entities. Mr. Eglin attached to his affidavit a copy of the lease, as well as a copy of the 2012 Asset Exchange Agreement by which LAO transferred the rights to FMO Real Estate, LLC and Fairway Outdoor Funding, LLC.

FMG also provided affidavits from Andy McDonald, FMG's general counsel, and Ryan Zaloudik, Fairway's former Real Estate Manager, testifying and providing supporting documentation establishing that FMG acquired the rights to the billboard and lease from FMO and Fairway Outdoor Funding as part of a December 2018

Asset Contribution Agreement involving FMG, FMO, Fairway Outdoor Funding, and other Fairway entities. FMG sufficiently proved its ownership interest in the billboard and lease.

FMG DID NOT NEED TO PROVE ITS PERFORMANCE UNDER THE LEASE

Remington next argues the trial court erred by granting FMG's motion for summary judgment because FMG did not conclusively prove its own performance under the lease agreement. We need not determine whether FMG provided sufficient evidence of its predecessors' performance under the lease, because such performance was not an element of its conversion claim—it was an element of the breach-of-contract claim FMG subsequently abandoned.

Despite the fact that performance under the lease is not an element of conversion, Remington argues that FMG had to prove such performance in order to establish its ownership interest in the billboard. We disagree. Although the lease and its provisions are relevant to determining whether FMG owns the billboard for purposes of establishing its conversion claim, the lease unequivocally states that the lessee would retain ownership over any structures it placed on the premises. Nothing in the lease suggests ownership of the structure was made contingent upon the lessee's continued contractual performance under the lease or that ownership would revert to the lessor in the event of a breach. Thus, FMG had no obligation to prove its continued performance under the lease to establish its ownership interest in the billboard.

FMG'S EVIDENCE SUFFICIENTLY SUPPORTS SUMMARY JUDGMENT

Remington next contends FMG's summary judgment evidence was legally insufficient because certain statements in FMG's supporting affidavits were conclusory, and two documents attached as exhibits to FMG's summary judgment motion were not properly authenticated. We need not reach the merits of Remington's objections because even if we assume those objections are meritorious, Remington offers no argument as to how the remaining summary judgment evidence is insufficient to support the trial court's judgment. *See* TEX. R. APP. P. 38.1(i). Regardless, having reviewed the summary judgment record, we conclude that the evidence sufficiently supports the trial court's partial summary judgment, even without considering any conclusory or unauthenticated statements to which Remington objects on appeal.

FMG'S EVIDENCE DOES NOT SUPPORT THE TRIAL COURT'S DAMAGES AWARD

After the bench trial on damages, the trial court found that "[t]he rental value for the billboard structure converted by Defendant is $4,441.46 per month which was the rental value of the sign at the location at the time of Defendant's conversion and during Defendant's use." Based on that finding, the trial court awarded FMG "actual damages in the amount of $159,899.76 which damages shall continue to accrue at the rate of $4,441.46 per month from June 6, 2022 until the billboard structure is returned to Plaintiff."

Remington argues that the evidence does not sufficiently support the trial court's damages award under a correct measure of damages. On this point, we agree. Although "[t]he usual measure of damages for conversion is the fair market value of the property at the time and place of conversion," a plaintiff may elect instead "to seek the return of the property along with damages for its loss of use during the time of its detention." *Wells Fargo Bank N.W., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 706 (Tex. App.—Dallas 2012, no pet.). Here, FMG elected to have the billboard returned and sought its loss-of-use damages.

"[A] party who loses the opportunity to accrue earnings from the use of its equipment may . . . recover loss of use damages in the form of lost profits" equal to the loss of net income to its business. *See id.* at 710. FMG's conversion claim is premised on Remington wrongfully refusing to allow FMG to remove and relocate its billboard after the lease's termination. Thus, to recover damages for loss of the billboard's use resulting from Remington's conversion, FMG had to establish the profits it could have earned if Remington had not prevented it from removing and relocating the billboard. Instead, over Remington's objection, FMG presented evidence only of the amount of revenue FMG could have earned if Remington had allowed it to keep using the billboard on Remington's property—a measure inconsistent with the legal and factual basis of FMG's conversion claim. Absent any evidence showing the profits FMG could have earned at another location if allowed

to remove and relocate the billboard, which FMG acknowledges it did not provide, the evidence is legally insufficient to support any loss-of-use damages.

### THE ECONOMIC-LOSS RULE DOES NOT BAR FMG'S CONVERSION CLAIM

Remington next contends FMG's claims are barred by the economic-loss rule, which generally precludes recovery in tort for losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy. *See Chapman Custom Homes, Inc. v. Dallas Plumbing Co.,* 445 S.W.3d 716, 718 (Tex. 2014). The rule does not, however, bar claims for breach of duties that exist independent of the parties' contractual obligations when the harm suffered is not merely the economic loss of a contractual benefit. *Id.*

Here, Remington's duty to refrain from unlawfully exercising dominion over FMG's personal property exists independently of the lease. FMG's loss—the deprivation of its tangible personal property—is not the mere economic loss of a contractual benefit under the lease and the economic-loss rule does not apply under these circumstances. *See Hilburn v. Storage Trust Props.*, LP, 586 S.W.3d 501, 507–10 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

### FMG'S FAILURE TO PROVE DAMAGES DOES NOT AFFECT ITS RIGHT TO RECOVER THE BILLBOARD

Remington next argues the trial court erred by ordering it to return the billboard structure to FMG because FMG did not sufficiently prove it suffered any damages as a result of the conversion. Remington bases its argument on *United*

–16–

*Mobile Networks, L.P. v. Deaton*, in which the supreme court noted that "[a] plaintiff must prove damages before recovery is allowed for conversion." 939 S.W.2d 146, 147 (Tex. 1997). Remington takes that statement literally to mean a plaintiff may not recover anything—including its converted property—unless it sufficiently proves monetary damages resulting from the conversion. From that premise, Remington argues that because FMG failed to offer sufficient evidence of its damages, it cannot recover its converted property.

In *Deaton*, the supreme court addressed only whether the evidence sufficiently supported the monetary damages awarded by the jury for conversion; it did not address whether the plaintiff could have sought return of its converted property without proving those damages. *See id.* And it would make little sense to require a plaintiff seeking the return of its converted property to prove injury beyond the unlawful deprivation of that property. The supreme court's statement in *Deaton*, viewed in its proper context, means only that a plaintiff cannot recover monetary damages for conversion without sufficiently proving that those damages resulted from the conversion.

Indeed, citing *Deaton*, we stated in *Wells Fargo Bank Northwest N.A. v. RPK Capital XVI, L.L.C.*, that "[a] plaintiff must prove damages before recovery is allowed for conversion." 360 S.W.3d at 706. Yet, despite the plaintiff's failure in that case to offer sufficient evidence to support its loss-of-use damages, we affirmed the

trial court's judgment awarding the plaintiff possession of its converted property. *See id.* at 713. We reject Remington's arguments based on *Deaton*.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY ORDERING REMINGTON TO ALLOW FMG TO RECOVER THE BILLBOARD

Finally, Remington contends the trial court erred by ordering Remington to cooperate in allowing FMG to recover the billboard from Remington's property. Remington argues that "in essence, the trial court impermissibly awarded mandatory injunctive relief for a breach of contract claim." It thus argues that FMG should be denied any recovery because it had an adequate remedy available at law—monetary damages for the billboard's fair-market value—and did not demonstrate it would suffer irreparable injury or extreme hardship if not allowed to recover the billboard.

We reject the premise of Remington's argument. The trial court did not award mandatory injunctive relief for a breach-of-contract claim; it merely enforced FMG's right to elect the return of its property as a remedy for conversion. *See id.* at 706–07 (plaintiff may elect to either recover its converted property and seek loss-of-use damages or recover damages for the property's fair-market value at the time and place of conversion); *see also Storms v. Reid*, 691 S.W.2d 73, 75 (Tex. App.—Dallas 1985, no writ) ("In conversion cases, the trial court must be given the discretion required to fashion an equitable remedy.").

Remington's reliance on *Alert Synteks, Inc. v. Jerry Spencer, L.P.*, 151 S.W.3d 246 (Tex. App.—Tyler 2004, no pet.), is misplaced. There, an intervenor obtained a

–18–

pretrial temporary injunction preventing a party from selling certain equipment the intervenor alleged the other party had wrongfully converted. Our sister court found that the trial court abused its discretion by granting the injunction because the intervenor failed to establish it had no adequate remedy at law. *See id.* at 254. Here, in contrast, the trial court did not grant a pretrial temporary injunction based on allegations of conversion; it issued a post-trial judgment awarding a plaintiff the return of its converted property. Remington cites no Texas authority holding that a plaintiff electing the remedy of having its converted property returned must also establish that it has no adequate remedy at law or that it will suffer irreparable injury or extreme hardship if the property is not returned. We decline to adopt those requirements here.

\* \* \*

We reverse the trial court's judgment to the extent it awards FMG loss-of-use damages and render judgment that FMG take nothing on its claim for such damages. In all other respects, we affirm the trial court's judgment.

|  | /Cory L. Carlyle/ |
|---|---|
| 221366f.p05 | CORY L. CARLYLE |
|  | JUSTICE |



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

REMINGTON SHERMAN
AUTOMOTIVE, LLC, Appellant

No. 05-22-01366-CV          V.

FMG NORTH TEXAS, LLC,
SUCCESSOR IN INTEREST OF
FMO REAL ESTATE, LLC,
Appellee

On Appeal from the 59th Judicial
District Court, Grayson County,
Texas
Trial Court Cause No. CV-19-1015.
Opinion delivered by Justice Carlyle.
Justices Smith and Kennedy
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment that awards damages to FMG North Texas, LLC and **RENDER** judgment that FMG North Texas, LLC take nothing on its claim for damages. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 27th day of December, 2023.